61 P.3d 1196 (2003)
114 Wash.App. 823
Larry B. MARTIN, individually and as Personal Representative for the Estate of Diana L. Martin, Respondent,
v.
GOODYEAR TIRE & RUBBER CO., an Ohio corporation, Appellant.
No. 48743-4-I.
Court of Appeals of Washington, Division 1.
January 6, 2003.
*1197 L. William Houger, Sharon Ambrosia-Walt, Seattle, WA, Christopher Shank, Brenda Hamilton, Sharon Stallbaumer, Shank & Hamilton P.C., Kansas City, MO, for Appellant.
Howard Goodfriend, Edwards Sieh Smith & Goodfriend, P.S., Seattle, WA, Aaron N. Woods, Lisa Bower, Woods & Bower, Kansas City, MO, for Respondent.

Opinion Published In Part
COLEMAN, J.
This products liability case arose from a fatality automobile accident involving Oregon residents traveling through southeastern Washington. Goodyear Tire & Rubber Co. manufactured the components of a wheel assembly that separated from an oncoming truck and caused the fatal injury. Goodyear appeals a judgment on a jury verdict. On appeal, Goodyear contends that the trial court erred when it declined to apply Oregon's statute of repose, which would have barred the claims asserted against Goodyear in this case. We conclude that the trial court correctly applied Washington law. We also reject Goodyear's contention that there was insufficient evidence produced at trial to support the jury's determination that the useful safe life of the product had not expired. Goodyear also challenges several evidentiary rulings made by the trial court. We find no reversible error and affirm.

FACTS
On May 27, 1997, Larry and Diana Martin were driving westbound on SR 12 in Walla Walla County when a large metal ring flew through the windshield of their car and struck Mrs. Martin in the head. The source of the metal ring was a commercial truck, owned by Humbert Construction, an Oregon company, that was heading eastbound on SR 12. Before coming off of the truck, the metal ring, known as a side ring, had been part of a dual-tire wheel assembly. The wheel assembly consisted of side-by-side rubber tires, each mounted on a metal wheel rim and held in place by a side ring. When the tire is inflated, the side ring engages with the rim's "gutter" to secure the tire and inner tube to the rim. A small gap on the C-shaped side ring facilitates installation. When that gap expands and the ends of the ring are too far apart to properly secure the tire, the side ring is "sprung" and should be discarded.
The accident occurred when the inner tire on the truck went flat and the loss of air pressure caused the inner side ring to separate from the wheel rim. The side ring detached from the axle and ricocheted off the road and into the Martins' car. It passed through the windshield, hit Mrs. Martin's head as she sat in the passenger seat, and exited through the rear window. Mr. Martin, who was driving, was not injured other than minor scratches from the broken glass.
At the time of the accident, the truck was hauling a trailer loaded with rock from an Oregon quarry to a destination in Washington. The trailer was overloaded, carrying 8,800 pounds per axle over the legal limit. It was weighed prior to leaving Oregon by Humbert's driver/operator and after the accident by the Washington State Patrol. The side ring that killed Mrs. Martin was manufactured no later than January 1956, thus it was at least 41 years old at the time of the accident. The wheel rim that it had been attached to was manufactured no later than *1198 1973, 24 years before the accident. Both were manufactured and designed in Ohio or Michigan by Goodyear Tire & Rubber Co., an Ohio corporation.
Larry Martin filed a wrongful death action in King County Superior Court, alleging that both Humbert and Goodyear were liable for his wife's death under Washington law on theories of negligence and product liability. Martin's claims against Goodyear were based upon the theory that the side ring on Humbert's truck was defectively designed such that it created an unreasonable risk of accidental separation. Later versions of the side ring were designed with a locking mechanism that prevented accidental separation. Martin alleged that Humbert was at fault for Mrs. Martin's death because Humbert had been negligent in its maintenance and operation of the truck and trailer.
Humbert settled with Martin just before trial. The case proceeded to trial on Martin's claims against Goodyear. A jury found in Martin's favor and allocated 67 percent of the fault for the accident to Goodyear and 33 percent to Humbert.

ANALYSIS
1. Statute of Repose
Goodyear claims that the trial court erroneously applied Washington law to Martin's products liability claims. Goodyear argues that the trial court should have applied Oregon's statute of repose, which immunizes manufacturers from products liability claims brought more than eight years after delivery of the product. Application of Oregon law would have resulted in dismissal of Martin's products liability claims on summary judgment based upon the age of the wheel assembly components.
"To engage in a choice of law determination, there must first be an actual conflict between the laws or interests of Washington and the laws or interests of another state." Rice v. Dow Chem. Co., 124 Wash.2d 205, 210, 875 P.2d 1213 (1994). The law at issue here is the statute of repose applicable to products liability claims. Washington's statute of repose, RCW 7.72.060(2), provides a rebuttable presumption that a product's useful safe life expires twelve years after delivery. A manufacturer will not be liable for harm that occurs after the useful safe life expires. RCW 7.72.060(1)(a). The useful safe life is the amount of time that a product would normally be likely to perform or be stored in a safe manner. RCW 7.72.060(1)(a). In contrast, Oregon's statute of repose, Or.Rev.Stat. § 30.905(1) extinguishes all products liability claims eight years after the product is delivered. Whether Martin has a viable products liability claim against Goodyear depends on which state's law applies because the age of the wheel assembly exceeds eight years. There is, therefore, an actual conflict between Washington and Oregon law that requires us to engage in a choice of law analysis.
In choice of law cases, Washington courts apply the "most significant relationship" test, set forth in the Restatement (Second) Conflict of Laws § 145 (1971). Johnson v. Spider Staging Corp., 87 Wash.2d 577, 580, 555 P.2d 997 (1976). Section 145 provides:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[[1]]
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred, *1199 (b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
In personal injury cases, the law of the state where the injury occurred applies unless another state has a greater interest in determination of that particular issue. Bush v. O'Connor, 58 Wash.App. 138, 791 P.2d 915, 918, 919 (1990). The Restatement (Second) Conflicts of Laws § 146 (1971) provides:
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Restatement (Second) Conflicts of Laws § 146 (cited in Bush, 58 Wash.App. at 144, 791 P.2d 915). Oregon courts follow the same presumption. See Myers v. Cessna Aircraft Corp., 275 Or. 501, 514-15, 553 P.2d 355, 367 (1976) (wrongful death).
Notwithstanding this presumption, Goodyear argues that Oregon's statute of repose should apply because of the number of parties and events associated with this accident that are based in Oregon. It notes the following Oregon contacts: an Oregon company, Humbert, owned and operated the wheel assembly at issue; Humbert maintained and installed the wheel assembly in Oregon; and Humbert overloaded and weighed the trailer in Oregon. Goodyear also highlights the Martins' contacts with Oregonthey were Oregon residents, were traveling home to Oregon at the time of the accident, and Mrs. Martin's estate and beneficiaries are all located in Oregon.
But we must evaluate the contacts both quantitatively and qualitatively, based upon the location of the most significant contacts as they relate to the particular issue at handthe statute of repose. Spider Staging, 87 Wash.2d at 581, 555 P.2d 997. Goodyear's arguments in favor of Oregon law rely heavily on acts and omissions committed by Humbert, but Humbert's acts and omissions are not relevant to this inquiry. Mentry v. Smith, 18 Wash.App. 668, 571 P.2d 589 (1977). Instead, we must focus on the contacts pertinent to the products liability claims against Goodyear.
Although there are no Washington residents involved in this case, the mere presence of an Oregon plaintiff does not persuade us that Oregon law applies with respect to the products liability claims against Goodyear. The Section 145 contacts in this case are:
a) Larry and Diana Martin were Oregon residents at the time of the accident.
b) Goodyear is an Ohio corporation that does business in all fifty states.
c) Humbert is an Oregon corporation that bases its business in Oregon and conducts business in Washington. It has a registered agent in Walla Walla.
d) At the time of the accident, Humbert's truck was transporting a load of rock from Oregon to a destination in Washington.
e) The wheel assembly at question was likely designed and manufactured in Ohio and Michigan. It is unknown how or when Humbert acquired it.
f) The accident occurred on SR 12 in Walla Walla County.
g) There is no relationship between the parties that existed prior to the accident.
The Martins were Oregon residents, but their injuries arose from an accident that took place in Washington.[2] The tortfeasor, *1200 Goodyear, is an Ohio corporation that does business in all fifty states. It had no prior contact with the Martins. There was no evidence that the wheel assembly in question entered the stream of commerce or was manufactured or designed in Washington or Oregon. The number of contacts with Washington in this case is not overwhelming, but the fact that Goodyear's product caused injury in Washington is qualitatively significant. Moreover, Goodyear's contacts with Oregon with respect to this particular issue are virtually nonexistent. Where no injury or injury-causing conduct occurred in Oregon and the non-Oregon defendant has not identified any particular contacts with Oregon other than the fact that its product was ultimately purchased and used by an Oregon resident who is not the injured party in this case, we do not find that Oregon's contacts exceed Washington's. Goodyear cites several products cases involving multi-state trips where the law of the home state was applied, but all of those cases involve parties who established relationships with the defective product in their home states, well before any accident occurred. See Bonti v. Ford Motor Co., 898 F.Supp. 391 (S.D.Miss.1995); Phillips v. General Motors Corp., 298 Mont. 438, 995 P.2d 1002 (2000) (plaintiffs purchased defective vehicle in home state); and Frosty v. Textron, Inc., 891 F.Supp. 551 (D.Or.1995) (helicopter accident where Oregon pilot died in Washington). When some aspect of that preexisting relationship is at issue, courts are less likely to apply the law of the state where the accident happened to occur. This case differs from the cases cited by Goodyear because the Martins never had a preexisting relationship with Goodyear.
In contrast, where a defendant's violation of the local tort laws or rules of the road is at issue, courts tend to apply the law of the injury state, even if only one or neither of the parties is a resident. See Ellis v. Barto, 82 Wash.App. 454, 458-59, 918 P.2d 540 (1996) (Idaho law applies to two-car accident in Idaho between Washington residents visiting Coeur d'Alene for one day); Jones v. Cook, 587 So.2d 570 (Fla.Dist.Ct.App.1991) (Georgia law applies to two-car accident in Georgia between Florida residents); Levario v. Motorists Mut. Ins. Co., 109 Ohio App.3d 451, 672 N.E.2d 672 (1996) (under the Section 146 presumption, Michigan law applied when an Ohio motorist driving through Michigan was injured by a piece of metal that flew through her windshield after falling off an unidentified truck). Furthermore, in the above-cited cases, the courts relied on the interests to be served in applying a state's law on a particular issue. We, too, must analyze the principles behind the statute of repose to determine which state's interests will prevail. Spider Staging, 87 Wash.2d at 582, 555 P.2d 997.
Here, Washington and Oregon adopted their respective statutes of repose in 1981 and 1977 in response to identical stimuli-concerns from local businesses and manufacturers about the high cost of liability insurance. Oregon's statute of repose, ORS 30.905, shortened the time for filing a products liability lawsuit to eight years from delivery of the product to the end user. Shasta View Irrigation Dist. v. Amoco Chems. Corp., 329 Or. 151, 163, 986 P.2d 536, 542 (1999). The intent was to prevent stale claims and to provide greater certainty to manufacturers (and their insurers) by limiting the time for filing a products liability lawsuit. Shasta View, 329 Or. at 163, 986 P.2d 536.
Washington's statute of repose, adopted as part of the Tort Reform Act of 1981, adopts a more consumer-friendly approach. The time period for bringing a products liability suit under Washington's statute of repose is based upon a product's "useful safe life," which presumes that a particular product may be safely used for up to twelve years. RCW 7.72.060. A claimant may rebut this presumption by a preponderance of the evidence that the useful safe life exceeds twelve years. Rice v. Dow Chem. Co., 124 Wash.2d 205, 212, 875 P.2d 1213 (1994). The preamble of the tort reform act explains the reasons *1201 for adopting this rebuttable presumption:
The purpose of this amendatory act is to enact further reforms in the tort law to create a fairer and more equitable distribution of liability among parties at fault.
Of particular concern is the area of tort law known as product liability law. Sharply rising premiums for product liability insurance have increased the cost of consumer and industrial goods. These increases in premiums have resulted in disincentives to industrial innovation and the development of new products. High product liability premiums may encourage product sellers and manufacturers to go without liability insurance or pass the high cost of insurance on to the consuming public in general.
It is the intent of the legislature to treat the consuming public, the product seller, the product manufacturer, and the product liability insurer in a balanced fashion in order to deal with these problems.
It is the intent of the legislature that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired. It is further the intent of the legislature that retail businesses located primarily in the state of Washington be protected from the substantially increasing product liability insurance costs and unwarranted exposure to product liability litigation.

Brewer v. Fibreboard Corp., 127 Wash.2d 512, 901 P.2d 297 (1995) (quoting Preamble, Laws of 1981, ch. 27, § 1) (some italics added and some omitted). The legislative choices made in Oregon and Washington reflect similar concerns for protecting businesses and manufacturers from high liability insurance premiums and the risk of stale claims, but Washington law clearly provides greater protection for persons injured by defective products. Oregon's statute is concerned primarily with protecting Oregon businesses and manufacturers doing business in Oregon. In some cases, that protection comes at the expense of injured persons, but that is a policy choice made by the Oregon legislature.
Goodyear's argument that the Martins are not entitled to the protections of Washington law necessarily presumes that Goodyear was intended to benefit from the protections of Oregon's law.[3] But analysis of Oregon's statute of repose belies this presumption. A state's interest in preventing financial burdens "is primarily local; that is, a state by enacting a damage limitation seeks to protect its own residents." Spider Staging, 87 Wash.2d at 582-83, 555 P.2d 997. Under these circumstances, Oregon's intention to protect local businesses and manufacturers is not furthered by applying Oregon law to immunize Goodyear from liability.
In this case, Goodyear's product was neither designed nor manufactured in Oregon, nor was it in Oregon when it caused injury. Unlike Rice,[4] there is no evidence here that Goodyear sold or delivered this particular product for use in Oregon. And unlike Frosty, there is no evidence that Goodyear's product ever came into contact with the injured persons in Oregon. We conclude that under these circumstances, Washington's interest in protecting persons from injuries from defective products within its borders outweighs Oregon's interest in protecting a manufacturer whose product arrives in Oregon through the stream of commerce and subsequently causes injury to a third party in another state.
This conclusion is supported by the decision in Johnson v. Spider Staging Corp., 87 *1202 Wash.2d 577, 555 P.2d 997 (1976). There, our Supreme Court held that Washington law applied to products liability claims by a Kansas resident against a Washington manufacturer arising from a fatal accident that occurred in Kansas. Under Kansas law, the Washington defendant's damages would be capped at $50,000, but Washington permitted full compensation for the wrongful death. After evaluating the competing interests that would be served by applying Washington or Kansas law, the court determined that Kansas's interest in limiting liability of local defendants was not served by capping a damage claim against a nonresident defendant where another state (Washington) sought to deter that defendant's tortious conduct. We find this rationale persuasive. Here, as in Johnson, Washington's deterrence interests will be better served by applying Washington law. See also Jaurequi v. John Deere Co., 986 F.2d 170 (7th Cir.1993) (state's interest in regulating foreign-made products that cause injury within state borders, even to nonresidents, upersedes interests of state of manufacture). We therefore decide that Washington's statute of repose applies to the claims against Goodyear in this case. The judgment of the trial court is affirmed on all issues.[5]
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
SCHINDLER, J., and APPELWICK, J., concur.
NOTES
[1] The Restatement (Second) Conflicts of Laws § 6(2)(1971) factors are:

a. the needs of the interstate and international systems,
b. the relevant policies of the forum,
c. the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue.
d. the protection of justified expectations,
e. the basic policies underlying the particular field of law,
f. certainty, predictability and uniformity of results, and
g. ease in the determination and application of the law to be applied.
[2] Goodyear also cites numerous products liability cases where the place of injury is discounted as merely "fortuitous," because the accident could have happened anywhere. In theory, however, every accident is fortuitous, as that word is defined, since it means, "happening by chance or accident." BLACK'S LAW DICTIONARY 783 (4th ed. 1968). The place of this accident is not fortuitous in the same meaning as the aviation accident case or the cases where a plaintiff is injured by a defect in the vehicle in which he or she was traveling. In those cases, the plaintiff established a relationship with the defective product in the home state. Here, the Martins had no relationship with the defective product, and without the combined efforts of the Martins and Humbert, contact would never have been made.
[3] The case cited by Goodyear for the proposition that Washington has no interest in providing a forum for an Oregon resident killed in an accident in Washington is substantially different than the case at bar. In Frosty v. Textron, Inc., 891 F.Supp. 551 (D.Or. 1995), the plaintiff sued the helicopter manufacturer in Oregon under Oregon law. No Washington law was at issue from the outset, and indeed, there was no conflict because the plaintiff's claims were barred under either state's statute of repose. In addition, the contacts surrounding the accident strongly favored application of Oregon law because the decedent, a professional pilot, had established a relationship with the product in Oregon before the accident occurred.
[4] In Rice, the pesticide that allegedly caused plaintiff's injuries was sold and delivered directly to plaintiff's Oregon employer and used by the plaintiff in Oregon. In Frosty, a pilot was employed by an Oregon employer when the helicopter he was flying crashed in Washington.
[5] Goodyear also argues that applying Washington law will overburden Washington courts with claims by Oregon residents and will constitute a return to the now-abandoned lex loci delicti test (law of the place of injury controls). But these arguments ignore the continued applicability of the Restatement significant relationship test, under which we conclude that Washington law applies.