[No. 54812-3-I.   Division One.   July 5, 2005.]

MARIA ZENAIDA-GARCIA, *as Personal Representative, Appellant,* v. RECOVERY SYSTEMS TECHNOLOGY, INC., *Respondent.*

*Janet L. Rice* (of *Schroeter Goldmark & Bender*), for appellant.

*Kenneth E. Brewe* (of *Brewe Layman, P.S.*), for respondent.

¶1  ELLINGTON, A.C.J. — This case presents a single choice of law issue. Oregon resident Gregorio Garcia-Munoz died in an industrial accident in Portland, allegedly because of a defective machine manufactured in Washington. We hold that under the circumstances of this case, Washington's statute of repose applies. We therefore reverse the trial court's grant of summary judgment and remand for trial.

## Background

¶2  Gregorio Garcia-Munoz lived and worked in Oregon. In October 2001, he was employed by Labor Ready in Portland and was working at TPS Technologies of Oregon, Inc., processing soil through a trommel, which recycles contaminated soils. As he was cleaning soil from under the machine, his shirt became caught on an unguarded part of the trommel and he was unable to free himself. He died at the scene from asphyxiation.

¶3  On behalf of Garcia-Munoz's estate, his sister, Maria Zenaida-Garcia, filed this action against the alleged manufacturer of the machinery, Recovery Systems Technology, Inc. (Recovery Systems), a Washington corporation. Zenaida-Garcia alleges Recovery Systems manufactured the trommel in 1991 and sold it to Northwest Design and Equipment Company, a Spokane company, which sold the trommel to Oregon Hydrocarbon in Portland, which in turn sold it to TPS Technologies.

¶4 Arguing that the suit was barred by Oregon's eight-year statute of repose,[1] Recovery Systems sought summary judgment. The court granted the motion. Zenaida-Garcia appeals, asserting that Washington's 12-year statute of repose applies to this product liability action and the Estate's claim is not time barred. We apply the usual standard of review on summary judgment.[2]

## ANALYSIS

¶5 Under Washington's statute of repose, a manufacturer is not liable for causes of action accruing after the useful safe life of the product.[3] RCW 7.72.060(2) creates a rebuttable presumption that a product's useful safe life expires 12 years after delivery. The Oregon statute of repose is eight years.[4] Garcia-Munoz died eight and a half years after the trommel was delivered. The only question here is which of these two statutes should control.[5]

¶6 Washington has adopted the "most significant relationship" rule for choice of law problems in cases sounding

---

[1] A statute of repose terminates a right of action after a specified time, even if the injury has not yet occurred. This compares to a statute of limitation, which operates to bar an already accrued claim after a specified time period. *Morse v. City of Toppenish*, 46 Wn. App. 60, 64, 729 P.2d 638 (1986).

[2] We review an order of summary judgment de novo and engage in the same inquiry as the trial court, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

[3] The useful safe life is the amount of time a product would normally be likely to perform or to be stored in a safe manner. RCW 7.72.060(1)(a).

[4] OR. REV. STAT. § 30.905(1) ("a product liability civil action may not be brought for any death, personal injury or property damage that is caused by a product and that occurs more than eight years after the date on which the product was first purchased for use or consumption").

[5] "To engage in a choice of law determination, there must first be an actual conflict between the laws or interests of Washington and the laws or interests of another state." *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 210, 875 P.2d 1213 (1994).

in tort.[6] Under this approach, the rights and liabilities of the parties are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties.[7]

¶7 In *Johnson v. Spider Staging Corp.*,[8] a Kansas resident died when he fell from a scaffold manufactured by a Washington corporation. His wife sued the Washington corporation for wrongful death. The issue was whether Washington or Kansas law on wrongful death damages applied. In holding that Washington law applied, the *Spider Staging* court enunciated a two-step analysis for determining the appropriate choice of law. First, the court must evaluate the contacts with each potentially interested state, including the following:

> "(a) the place where the injury occurred,
>
> "(b) the place where the conduct causing the injury occurred,
>
> "(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> "(d) the place where the relationship, if any, between the parties is centered.
>
> "These contacts are to be evaluated according to their relative importance with respect to the particular issue."[9]

The court emphasized that "[o]ur approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found."[10]

¶8 If the contacts are evenly balanced, the second step of the analysis involves an evaluation of the interests and public policies of the concerned states to determine which

---

[6] *Martin v. Humbert Constr., Inc.*, 114 Wn. App. 823, 829, 61 P.3d 1196 (2003) (citing *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997 (1976)).

[7] *Spider Staging*, 87 Wn.2d at 580.

[8] 87 Wn.2d 577, 555 P.2d 997 (1976).

[9] *Spider Staging*, 87 Wn.2d at 581 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971)).

[10] *Id.*

state has the greater interest in determination of the particular issue.[11]

¶9 In *Spider Staging*, the relevant Washington contacts included the fact that the scaffolding manufacturer was a Washington corporation having its principal place of business in Washington, that all the corporation's advertising originated in Washington, that the scaffold was shipped from Washington, and that Washington set the safety requirements for the scaffold. The relevant Kansas contacts were the fact that Kansas was the location of the injury and death, the plaintiffs were residents of Kansas, the plaintiff's place of business was Kansas, and the plaintiff ordered the scaffold from a Kansas distributor.[12] The *Spider Staging* court found these contacts evenly balanced.[13]

¶10 Here, the relevant Washington contacts are that the alleged manufacturer[14] is a Washington corporation with its principal place of business in Washington, and the product was originally sold to a Washington company. The relevant Oregon contacts are that Oregon is the location of injury and death, the decedent was resident and employed in Oregon, and the machine has been operating in Oregon for eight and a half years.

¶11 Relying on *Martin v. Humbert Construction, Inc.,*[15] and *Rice v. Dow Chemical Co.,*[16] Recovery Systems argues that the determining factor is the location of the injury and death. We disagree. First, if this were so, *Spider Staging* would have been decided otherwise. Second, neither *Martin* nor *Rice* so holds. Although there is presumption that in

---

[11] *Myers v. Boeing Co.*, 115 Wn.2d 123, 133, 794 P.2d 1272 (1990) (citing *Spider Staging*, 87 Wn.2d at 582).

[12] *Spider Staging*, 87 Wn.2d at 581.

[13] *Id.* at 582.

[14] Recovery Systems denies it manufactured the trommel in question, and contends the uncertainty as to its provenance should weigh in the conflict of laws analysis. We disagree. On summary judgment all inferences are drawn against the moving party. *Wilson*, 98 Wn.2d at 437.

[15] 114 Wn. App. 823, 61 P.3d 1196 (2003).

[16] 124 Wn.2d 205, 875 P.2d 1213 (1994).

personal injury cases the law of the place of the injury applies, this presumption is overcome if another state has a greater interest in determination of a particular issue.[17]

¶12 In *Martin*, part of a wheel assembly fell from an Oregon-based truck in Washington, killing Oregon resident Diana Martin as she rode in a nearby car. Her husband sued Goodyear Tire and Rubber Company, the manufacturer of the wheel assembly. Goodyear sought the refuge of the Oregon statute of repose, but the court held the Washington statute applied. The fact that Goodyear's product caused an injury in Washington was qualitatively significant, but not determinative. Rather, the court conducted a full analysis under *Spider Staging*, noting that "Goodyear's contacts with Oregon with respect to this particular issue are virtually nonexistent."[18] The court observed that Goodyear did business in all 50 states and that there was no evidence the wheel assembly entered the stream of commerce or was manufactured in either Oregon or Washington. Thus, no injury-causing conduct occurred in Oregon. The only Oregon contacts were the residence of the decedent and the fact that Goodyear's product was ultimately purchased and used by an Oregon trucking company. The court proceeded to analyze the principles behind the statute of repose to determine which state's interests would prevail.

¶13 In *Rice*, the plaintiff developed leukemia after exposure to herbicides manufactured by Dow. His exposure occurred almost entirely in Oregon, where he worked for the United States Forest Service. The only significant Washington contact was that the plaintiff resided in Washington when he became ill. The court noted:

> [E]ven if this court were to find that the tort occurred in Washington, which we do not, this would not compel an application of Washington law. The old rule that the law of the

---

[17] *Martin*, 114 Wn. App. at 830 (quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 146 (1971)).

[18] *Id.* at 831.

place of the wrong governs the action has been rejected for the "most significant relationship" rule.[19]

The significant relationships with Oregon included the facts that the relationship between the parties occurred there, the damaging product was placed in the stream of commerce and sent there, the injury occurred there, and at the time of his exposure, plaintiff lived there. The absence of significant Washington relationships was the deciding factor, not merely the place of injury.

¶14 We conclude that the contacts here are evenly balanced. Oregon was the location of the injury and the residence of the victim. But the defendant is a Washington corporation engaged in designing and manufacturing trommels in Washington; the cause of action is negligent and unsafe design of the trommel. Thus, the conduct causing the injury, and the place where the relationship is centered, is Washington.[20]

¶15 Because the contacts are evenly balanced, we turn to the second step of the *Spider Staging* analysis to determine the weightier policy interests of the two states.[21]

¶16 The *Restatement* explains that:

In large part, the answer to [the choice of law] question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred. The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of *the purpose sought to be achieved by*

---

[19] *Rice*, 124 Wn.2d at 215 (citing *Spider Staging*, 87 Wn.2d at 580).

[20] *See Perry v. Aggregate Plant Prods. Co.*, 786 S.W.2d 21, 25 (Tex. App. 1990) (conduct causing the injury and relationship between parties centered in Texas where a defective silo was manufactured, because the cause of action was the unsafe design and manufacture of the silo).

[21] *See Workman v. Chinchinian*, 807 F. Supp. 634, 639 (E.D. Wash. 1992) (applying step two of the *Spider Staging* analysis where both Idaho and Washington had significant contacts with the parties).

*their relevant local law rules and of the particular issue* [involved].[22]

¶17 We analyzed the history and purpose of both states' statutes of repose in *Martin*. While both statutes were enacted in response to industry concerns about the high cost of liability insurance, Washington's statute is more consumer friendly.[23] When Washington's tort reform act was enacted in 1981, the legislature announced its desire to balance two interests: protecting Washington industries from excessive litigation, and preserving the right of consumers to seek redress for injuries caused by unsafe products.[24] The legislature enacted a 12-year statute of repose, which at the time was the nation's longest for product liability,[25] two years longer than that proposed by the Model Uniform Product Liability Act.[26] The duration of the Washington statute of repose expresses a policy of deter-

---

[22] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 cmt. c (1971) (emphasis added).

[F]actors relevant to the choice of the applicable law include:

    (b) the relevant policies of the forum,

    (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

[23] *Martin*, 114 Wn. App. at 833.

[24] The preamble of the Washington tort reform act states:

    It is the intent of the legislature to treat the consuming public, the product seller, the product manufacturer, and the product liability insurer *in a balanced fashion* in order to deal with these problems.

    It is the intent of the legislature that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired. It is further the intent of the legislature that retail businesses located primarily in the state of Washington be protected from the substantially increasing product liability insurance costs and unwarranted exposure to product liability litigation.

LAWS OF 1981, ch. 27, § 1 (emphasis added).

[25] *See* Michael H. Martin, *A Statute of Repose for Products Liability Claims*, 50 FORDHAM L. REV. 745, 771-72 (1982) (statutes adopted prior to 1982 had repose periods of 3 to 12 years, with the majority at 10).

[26] 44 Fed. Reg. 62,714 (Oct. 31, 1979).

rence of tortious conduct and encourages manufacturers to make safe products for consumers.[27]

¶18  In contrast, Oregon's statute is "concerned primarily with protecting Oregon businesses and manufacturers doing business in Oregon."[28] The statute provides for a repose period of eight years.[29] This reflects a policy of protecting Oregon manufacturers from risk of litigation. As the court noted in *Spider Staging*, "a state by enacting a damage limitation seeks to protect its own residents."[30]

¶19  In *Spider Staging*, the court held that Washington's policy of full compensation for wrongful death claims was applicable, rather than the Kansas law capping damages at $50,000. Because the defendants were Washington corporations, application of the Kansas rule would not protect Kansas residents, but would merely limit their ability to recover damages. Application of the Washington rule would deter tortious conduct and encourage manufacturers to make safe products.[31] Kansas had no interest in applying its limitation to nonresident defendants being sued in their home state, while Washington had a legitimate interest in application of its own law.[32]

¶20  The *Martin* court applied the *Spider Staging* analysis and held that Oregon's intention to protect local companies and manufacturers was not furthered by applying Oregon law to immunize a non-Oregon company—Goodyear—from liability, particularly where there was no

---

[27] *See Spider Staging*, 87 Wn.2d at 583 (concluding that Washington's policy of full compensation in wrongful death actions demonstrated Washington's deterrence policy regarding the tortious conduct of manufacturers).

[28] *Martin*, 114 Wn. App. at 834.

[29] *Erickson Air-Crane Co. v. United Techs. Corp.*, 303 Or. 281, 286, 735 P.2d 614 (1987).

[30] *Spider Staging*, 87 Wn.2d at 582-83; *see also Martin*, 114 Wn. App. at 834.

[31] *Spider Staging*, 87 Wn.2d at 583.

[32] *Id.* at 584.

evidence that Goodyear sold or delivered the product for use in Oregon.[33]

¶21 Recovery Systems contends that Oregon's statute of repose was enacted to protect not only Oregon businesses, but foreign corporations doing business in Oregon as well.[34] But there is no evidence that Recovery Systems did or intended to do business in Oregon. And while protecting manufacturers whose products are used in Oregon may be a collateral purpose of Oregon's statute, it is necessarily a secondary purpose and does not outweigh the policies furthered by the Washington statute.

¶22 Here, Recovery Systems designed and manufactured the trommel in Washington and sold it to a Washington company based in Spokane. Washington has strong policy interests in deterring the design, manufacture, and sale of unsafe products within its borders. In contrast, Oregon has no strong interest in application of its statute of repose to protect a Washington corporation, and application of the Oregon rule would not protect Oregon residents, but would merely limit their ability to recover damages. In light of Washington's weightier policy interests, we conclude the Washington statute of repose applies.

¶23 Reversed.

AGID and SCHINDLER, JJ., concur.

Review denied at 156 Wn.2d 1026 (2006).

---

[33] *Martin*, 114 Wn. App. at 835.

[34] *Rice*, 124 Wn.2d at 216 ("Applying Oregon law achieves a uniform result for injuries caused by products used in the state of Oregon and predictability for manufacturers whose products are used or consumed in Oregon.").