FILED
COURT OF APPEALS
DIVISION II

2014 APR 15 AM 8: 55

STATE OF WASHINGTON
BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SHAOUL S. HAI, an individual, | No. 43877-1-II |
| Appellant, | |
| v. | |
| STL INTERNATIONAL, INC., a Washington corporation, and TSA STORES, INC., a Delaware corporation, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — Shaoul Hai injured himself tripping over an inversion table on display in a Texas sporting goods store. He then waited nearly three years before bringing a personal injury claim in Washington against retail store owner The Sports Authority ("TSA") and STL International, Inc. ("STL"), the company that designed and manufactured the inversion table. Both defendants successfully moved for summary judgment on the grounds that Texas law should govern this dispute and that the suit is time-barred by Texas's two-year statute of limitations. Hai now appeals, arguing that the Washington Products Liability Act (WPLA), chapter 7.72 RCW, should govern this dispute. We disagree and affirm the superior court's summary dismissal of Hai's claims.

## FACTS

On February 8, 2009, Hai, a Texas resident, was shopping for stationary bicycles at a Dallas, Texas sporting goods store owned by TSA. Hai was in the area of the store that displayed large exercise equipment, including a Teeter Hang-Up inversion table designed and

manufactured by STL, a Washington company. Although STL had provided TSA with an external lock to keep the inversion table locked in place while on display, the inversion table was not secured at the time. With his back to the Teeter Hang-Up, and while moving to look at another piece of equipment, Hai tripped on the inversion table's bottom support tubing. As Hai fell, the inversion table allegedly flipped up, causing Hai to be thrown and injure his neck.

Hai sought treatment for his injuries from a number of doctors in Texas and, within six months of the accident, retained counsel in Texas for a potential premises liability lawsuit against TSA. In a May 11, 2009 letter to TSA's insurer, Hai's Texas attorney argued that Hai's injuries

> were due to multiple failures of your insured, including but not limited to your insured's improper placement of the equipment in an unsafe manner and location on the showroom floor, your insured's failure to properly secure the equipment and maintain it in a safe manner for customers, and your insured's failure to properly warn customers of the dangers associated with the equipment.

Clerk's Papers (CP) at 29. In a later settlement demand letter, Hai's Texas attorney repeated these arguments.

Texas has a two-year statute of limitations for personal injury suits. TEX. CIV. PRAC. & REM. CODE Ann. § 16.003(a). On February 28, 2011—after the applicable statute of limitations in Texas had already run—Hai's attorney again wrote TSA's insurer concerning a potential settlement. In that letter, Hai's attorney stated that he planned to file suit in Washington, STL's primary place of business, but nevertheless requested that TSA allow a six-month tolling period in Texas "to negotiate with STL, finalize those negotiations and hopefully resolve this matter outside of court." CP at 42. The record does not reflect how TSA responded to this letter. In December 2011, nearly three years after the accident, Hai filed suit in Washington.

Hai's complaint against STL and TSA alleged several theories of liability. Hai alleged that STL was liable under the WPLA because the inversion table he tripped over was either (1) defectively manufactured or constructed by STL, (2) defectively designed by STL, or (3) lacked sufficient warnings alerting consumers to the danger of walking near the product. Hai alleged that TSA was liable as a negligent product seller under the WPLA because it positioned "the product in such a way that a consumer might trip on it." CP at 302. He also separately alleged that TSA was liable under common law negligence for providing unsafe premises in its Texas store.

Both TSA and STL moved for summary judgment arguing that Texas law should govern this case and that Texas's two-year statute of limitations barred Hai's suit. In opposition to the motions, Hai produced a declaration from Jef Nelson, a Washington fitness instructor and gym owner. In his declaration, Nelson opined on the inadequacies of TSA and STL's safety procedures, the engineering of the Teeter Hang-Up, and the architecture and design of TSA's stores. Hai provided no other expert declarations in opposition to summary judgment.

On July 27, 2012, the superior court heard argument on the summary judgment motion, applied Texas's statute of limitations and dismissed the suit as time-barred. Hai appeals.

## ANALYSIS

Hai argues that the WPLA should govern this dispute and that the superior court erred in granting summary judgment to TSA and STL based on Texas's two-year statute of limitations. Because the contacts in this case favor application of Washington law, and policy considerations and caselaw do not dictate a different result, we disagree.

A.    STANDARD OF REVIEW

Hai appeals from the trial court's summary judgment order dismissing his products liability claim as time-barred under Texas law. "In review of summary judgment, this court engages in the same inquiry as the trial court." *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 208, 875 P.2d 1213 (1994). We resolve all factual disputes and reasonable inferences in favor of the nonmoving party. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 452, 842 P.2d 956 (1993). "[I]ssues of law are not resolved in either party's favor, but are reviewed de novo." *Rice*, 124 Wn.2d at 208. In addition, we review choice of law questions de novo. *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 690-91, 167 P.3d 1112 (2007).

B.    CHOICE OF LAW

Hai argues that because STL "failed to design a locking mechanism on the inversion table, the most significant contacts in this suit occurred in Washington" and this court should apply Washington law to his WPLA claim against STL and TSA. Br. of Appellant at 1. Because the *only* significant contact to Washington in this case involves STL's corporate headquarters and none of the contacts involving TSA's negligence as a product seller under the WPLA favor application of Washington law,[1] we disagree. Accordingly, we affirm the superior

---

[1] At oral argument before this court, Hai argued for the first time that the doctrine of depecage pertains to this case and that we should apply the law of Texas to TSA and Washington law to STL. Wash. Court of Appeals oral argument, *Hai v. STL International, Inc.*, No. 43877-1-II (Jan. 10, 2014), at 2 min. (on file with court). Hai is correct that Washington has adopted the principal of depecage in conflicts of law analysis. *See, e.g., Williams v. Leone & Keeble, Inc.*, 170 Wn. App. 696, 285 P.3d 906 (2012) (applying Idaho law to some claims and federal law to others), *review denied*, 176 Wn.2d 1030 (2013). However, Hai incorrectly states how the doctrine functions. As Division One of this court explained in *FutureSelect Portfolio Management, Inc. v. Tremont Group*, 175 Wn. App. 840, 856 n.15, 309 P.3d 555 (2013), "Under the principle of [depecage], different *issues* in a single case arising out of a common nucleus of

court's dismissal of Hai's products liability claim as time-barred under Texas's statute of limitations.

As a general matter, Washington courts analyze choice of law questions in a three-step process. First, "[a]n actual conflict between the law of Washington and the law of another state must be shown to exist before Washington courts will engage in a conflict of law analysis." *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 103, 864 P.2d 937 (1994). If such a conflict exists, we then apply the "'most significant relationship' test, set forth in the *Restatement (Second) of Conflict of Laws* § 145 (1971)," adopted by the Washington Supreme Court in *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997 (1976). *Martin v. Goodyear Tire & Rubber Co.*, 114 Wn. App. 823, 829, 61 P.3d 1196, *review denied*, 149 Wn.2d 1033 (2003). As discussed more fully below, "[u]nder this approach, the rights and liabilities of the parties are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wn. App. 256, 260, 115 P.3d 1017 (2005), *review denied*, 156 Wn.2d 1026 (2006). Finally, *if the contacts are evenly balanced*, the last step of the analysis "involves an evaluation of the interests and public policies of the concerned states to determine which state has the greater interest in determination of the particular issue." *Zenaida-Garcia*, 128 Wn. App. at 260-61.

---

facts may be decided according to the substantive law of different states." (Emphasis added.) Thus, contrary to Hai's assertion that different state laws can apply to different defendants on the same claim, the principle of depecage allows for the application of different substantive state law only to different legal claims, not different defendants on the same claim.

1.     Actual Conflict

A number of actual conflicts between Washington and Texas law are present under the circumstances of this case, apart from the obvious differences between the two states' statutes of limitations for personal injury suits. This is important because "variations in limitation periods are not subject to conflict of laws methodology." *Rice*, 124 Wn.2d at 210. Washington adopted the "Uniform Conflict of Laws—Limitations Act" (Act) in 1983. Under this Act, RCW 4.18.020 directs that courts first determine which state's substantive law applies before determining which state's statute of limitation applies. Then, "[a]fter the forum chooses the substantive law of another state, then that state's limitation period will apply." *Rice*, 124 Wn.2d at 210.

First, in Washington, the WPLA, chapter 7.72 RCW, is the exclusive remedy for product liability claims and preempts traditional common law remedies for product-related harms. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 322-23, 858 P.2d 1054 (1993); *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 853, 774 P.2d 1199, 779 P.2d 697 (1989). In contrast, under the Texas Products Liability Act, Texas Civil Practice & Remedies Code Ann. § 82, a claimant may bring a personal injury claim under several legal theories, including strict products liability. *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999).

Second, under Washington law, a plaintiff need not prove the availability of an alternative, safe design to recover under a design defect theory but may "establish that a product is unreasonably dangerous by means of factors other than the existence of alternative design." *Connor v. Skagit Corp.*, 99 Wn.2d 709, 715, 664 P.2d 1208 (1983). Texas law, by contrast, requires a plaintiff in a design defect products liability action to prove by a preponderance of the

evidence that there is a "safer alternative design" that "would have prevented or significantly reduced the risk of the claimant's personal injury. . . without substantially impairing the product's utility" and that such a design "was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge." TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a)(1), (b).

Third, Washington has abolished joint and several liability in cases where the plaintiff's own negligence has contributed to his or her injuries. RCW 4.22.070(1). In Texas, by contrast, a defendant is jointly and severally liable any time its share of responsibility for a plaintiff's injuries is greater than 50 percent. TEX. CIV. PRAC. & REM. CODE Ann. § 33.013(a)(1). Here, there is evidence that Hai may have been injured, in part, due to his own negligence.

Fourth, and of special importance given the facts of this case, Washington applies a "pure" comparative fault approach to negligence actions, meaning that a plaintiff's contributory negligence, no matter how great, does not bar recovery. RCW 4.22.005. Instead, "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault." RCW 4.22.005. Texas, by contrast, applies a "modified" comparative fault approach to negligence actions meaning that a plaintiff is barred from recovering damages if his or her percentage of fault is greater than 50 percent. TEX. CIV. PRAC. & REM. CODE Ann. § 33.001. Accordingly, if a Washington jury was to find that Hai was 70 percent at fault for his own injuries due to his carelessness while shopping, he could recover 30 percent of any damage award. Under Texas

7

law, though, if a jury found that Hai was greater than 50 percent at fault for his injuries, he would recover nothing.

Actual and substantial differences exist between the laws of Washington and Texas governing products liability claims. Accordingly, it is appropriate for us to conduct a choice of law inquiry.

2.    Contacts

After determining that an actual conflict of laws exists, we must determine which state has the most significant contacts with the parties and the issues in the case. *Johnson*, 87 Wn.2d at 580-81. In *Johnson*, the Washington Supreme Court adopted the approach set forth in the *Restatement (Second) of Conflict of Laws* § 145. 87 Wn.2d at 580-81. The *Restatement* states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. . . .
> (2) Contacts to be taken into account . . . to determine the law applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT § 145. Under this approach, the court "is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Johnson*, 87 Wn.2d at 581.

For personal injury actions, courts generally consider the place where the injury occurred as the most significant contact. *See, e.g., Rice*, 124 Wn.2d at 215 ("where the negligent act (for

example, negligent manufacturing) took place out of state, but the product arrived in Washington and caused personal injury here, it follows that the place of the tort is Washington"). Thus, in a number of cases involving personal injury, Washington courts have adopted the reasoning in the *Restatement* § 146, which states, "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." *See, e.g., Williams v. Leone & Keeble, Inc.*, 170 Wn. App. 696, 707, 285 P.3d 906 (2012), *review denied*, 176 Wn.2d 1030 (2013). Here, Hai's injury occurred in Texas, and this significant contact clearly favors application of Texas law to this dispute.

Hai argues that the second factor, the place where the conduct causing the injury occurred, weighs heavily in his favor. This assertion, however, is not supported by the record. As a preliminary matter, this argument ignores the negligent product seller component of Hai's products liability claim. Under that portion of the claim, Hai alleged that TSA created unsafe premises in its Texas store, failed to adequately warn consumers of the dangers of the product on display, and failed to secure the Teeter Hang-Up with the external lock provided by STL. All of this potential misconduct occurred entirely in Texas and Hai has provided no explanation or argument as to why Washington law should be applicable to these aspects of his products liability claim.

The crux of Hai's argument is that the Teeter Hang-Up was defectively designed by STL in Washington and that a design defect primarily caused his injury. In support of this claim, Hai relies entirely on the declaration of fitness instructor Nelson. Nelson opined that an inversion table without a built-in lock is inherently more dangerous than an inversion table with a built-in

9

lock. This argument is a red herring. The mere presence of a lock, whether internal or external, would necessarily have still required someone to lock the inversion table in order to prevent the type of incident involved here. Thus, the direct cause of the accident was the decision to leave the inversion table on the store floor unlocked, a decision made in Texas and one seemingly not affected by the lack of a built-in lock. Accordingly, the second factor—the place where the conduct causing the injury occurred—does not favor application of Washington law.

The third factor to consider under the *Restatement*, the domicile, residence, nationality, place of incorporation and place of business of the parties, is generally given very little weight. The Washington Supreme Court, for instance, has held that "residency in the forum state alone has not been considered a sufficient relation to the action to warrant application of forum law." *Rice*, 124 Wn.2d at 216. Here, STL is a Washington corporation. TSA is a Delaware corporation with its headquarters in Colorado. Hai is a Texas resident. Accordingly, this factor does not favor application of the law of either Washington or Texas (or Colorado or Delaware).

The final factor, the place where the relationship, if any, between the parties is centered, weighs in favor of applying Texas law. The only readily ascertainable relationship of any significance between these parties involves the negligence component of Hai's products liability claim. Under that component of the claim, Hai was TSA's "business invitee"[2] in its Texas store. Accordingly, this factor also favors application of Texas law.

---

[2] "A business invitee is defined as 'a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Beebe v. Moses*, 113 Wn. App. 464, 467, 54 P.3d 188 (2002) (quoting the RESTATEMENT (SECOND) OF TORTS § 332(3) (1965)).

On balance, the contacts in this case tip in favor of applying Texas law. Hai was injured in a Texas retail store (owned by a Delaware corporation headquartered in Colorado) while inadvertently tripping on a product designed in Washington, manufactured in China, and shipped to Texas from Georgia. The decisions on how to display the Teeter Hang-Up were made in Texas, and to the extent there is any relationship between the parties, it is centered in Texas. Accordingly, we conclude that Texas's substantive law is applicable to this dispute.

3.    Policy Considerations

Hai argues that Washington law should apply to this dispute "because it has a strong interest in deterring the design, manufacture, and sale of unsafe products within its borders." Br. of Appellant at 22. TSA and STL argue that the policy considerations behind the Washington Products Liability Act will not be advanced by applying Washington law to Hai's claims. We agree with TSA and STL.

First, Hai argues that Texas has no interest in having its statute of limitations applied in circumstances like these. Texas courts, however, have upheld a strong policy in favor of prompt prosecution of known claims. "[T]he primary purpose of . . . all limitations statutes, is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available." *Moreno v. Sterling Drug*, Inc., 787 S.W.2d 348, 351 (Tex. 1990). Moreover, Texas courts have held that "preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute [of limitations]." *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977).

Second, Texas has evidenced a strong interest in protecting its residents from personal injury caused by defective products. *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957-58 (5th Cir.),

11

*cert. denied*, 506 U.S.828 (1992); *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 250 (5th Cir. 1990) ("The Texas legislature and courts have developed an almost paternalistic interest in the protection of consumers."). Washington, on the other hand, has a policy of protecting its designers and manufacturers from excessive liability to injured plaintiffs. *Zenaida-Garcia*, 128 Wn. App. at 264 (citing LAWS OF 1981, ch. 27, § 1).

Third, application of Texas law "achieves a uniform result for injuries caused by products used in the state of [Texas] and predictability for manufacturers whose products are used or consumed in [Texas]." *Rice*, 124 Wn.2d at 216.

Finally, Washington has a strong policy against forum shopping when the applicable statute of limitations has passed in another state. RCW 4.16.290 provides:

> When the cause of action has arisen in another state, territory or country between nonresidents of this state, and by the laws of the state, territory or country where the action arose, an action cannot be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this state.

Thus, policy considerations do not weigh in Hai's favor.

### 4. Applicable Caselaw

Hai argues that *Johnson* and *Zenaida-Garcia* dictate a different result. Both cases, however, are distinguishable.

In *Johnson*, a Kansas resident fell to his death (in Kansas) from scaffolding designed, manufactured, and tested in Washington. 87 Wn.2d at 581. After determining that the contacts between Washington and Kansas were *evenly balanced*, the Washington Supreme Court weighed the various policy considerations and interests of both states. Importantly, the court noted that, although Kansas had a $50,000 limit on wrongful death damages designed "to protect defendants

from excessive financial burdens" and "eliminate speculative claims and difficult computation issues," those concerns were inapplicable because "all the defendants [in the case] are Washington corporations, and the application of the Kansas wrongful death limitation will not protect Kansas residents." *Johnson*, 87 Wn.2d at 582-83. The court further noted that, under Washington law, "[u]nlimited recovery will deter tortious conduct and will encourage respondents to make safe products for its customers."[3] *Johnson*, 87 Wn.2d at 583.

Here, Texas law does not have a similar cap on the damages that a plaintiff can recover in a products liability action. In fact Texas, unlike Washington, allows for punitive damage awards in products liability actions. *See, e.g., Sears, Roebuck & Co. v. Kunze*, 996 S.W.2d 416, 429-30 (Tex. App. 1999) (allowing a $2 million punitive damage award in a products liability case).

---

[3] The *Johnson* case predates passage of the Washington Products Liability Act. The preamble to the 1981 Act states,

> Of particular concern is the area of tort law known as product liability law. Sharply rising premiums for product liability insurance have increased the cost of consumer and industrial goods. These increases in premiums have resulted in disincentives to industrial innovation and the development of new products. High product liability premiums may encourage product sellers and manufacturers to go without liability insurance or pass the high cost of insurance on to the consuming public in general.
>
> It is the intent of the legislature to treat the consuming public, the product seller, the product manufacturer, and the product liability insurer in a balanced fashion in order to deal with these problems.
>
> It is the intent of the legislature that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired. It is further the intent of the legislature that retail businesses located primarily in the state of Washington be protected from the substantially increasing product liability insurance costs and unwarranted exposure to product liability litigation.

LAWS OF 1981, ch. 27, § 1. Accordingly, although Washington law still has an interest in deterring the tortious conduct of its manufacturers, the legislature would clearly have courts balance that interest against the costs of questionable products liability suits.

Thus, unlike in *Johnson*, Hai would not have been prejudiced in his ability to receive full compensation for any alleged "tortious conduct" of the product manufacturer had he filed this suit in Texas within the appropriate statute of limitations.

*Zenaida-Garcia* also is distinguishable. In that case, an Oregon resident was killed (in Oregon) by a piece of farm equipment designed, manufactured, and originally sold in Washington. *Zenaida-Garcia*, 128 Wn. App. at 258. After deciding that the contacts between Oregon and Washington were balanced, Division One of this court concluded:

> Washington has strong policy interests in deterring the design, manufacture and sale of unsafe products *within its borders*. In contrast, Oregon has no strong interest in application of its statute of repose to protect a Washington corporation, and application of the Oregon rule would not protect Oregon residents, but would merely limit their ability to recover damages.

*Zenaida-Garcia*, 128 Wn. App. at 266 (emphasis added).

This case does not involve statutes of repose but, instead, involves statutes of limitations. Moreover, unlike in *Zenaida-Garcia*, this case does not involve a Washington corporation selling a defectively designed or manufactured product within its own borders. In fact, *this case does not involve the sale or use of any item*—either here or in Texas. Unlike in both *Zenaida-Garcia* and *Johnson*, Hai never used the product he alleges injured him. As previously discussed, Hai's products liability claims primarily relates to the actions of an allegedly negligent product seller in Texas, not actual design defects of a product manufactured in Washington. Accordingly, neither of these cases are on point.

Because the contacts in this case favor application of Texas law, we affirm the superior court's summary dismissal of Hai's claims as time-barred under Texas's statute of limitations.[4]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, P.J.

_____
Penoyar, J.P.T.

---

[4] TSA moved for summary judgment below on the alternative ground that it was not subject to personal jurisdiction by Washington courts under the facts of this case. Contrary to Hai's assertions, TSA did not abandon this issue below and again briefed it on appeal. However, because we affirm the trial court's ruling applying Texas law to this dispute, we do not reach this issue. We do note that Hai requested attorney fees in his reply brief related solely to TSA's claim that it should not be subject to the personal jurisdiction of Washington's courts under the facts of this case. Hai cites RAP 18.9 in support of this contention. RAP 18.9, however, gives this court the power to sanction a party for filing a frivolous appeal. Here, TSA is not appealing the trial court's decision (Hai is). Furthermore, an appeal is frivolous only if "it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 619, 94 P.3d 961 (2004). The superior court never decided the jurisdictional question and, accordingly, it was not unreasonable for TSA to ask us to consider it. Moreover, RAP 2.5(a) allows a party to raise "at any time the question of appellate court jurisdiction." Hai's argument for attorney fees is not well founded and we do not consider it further.