[No. 7082-4-III.  Division Three.  May 13, 1986.]

ANDREA T. ERICKSON, *Appellant,* v. SENTRY LIFE INSURANCE COMPANY, *Respondent.*

*Steven H. Sackmann,* for appellant.

*Randall L. Stamper, Steven R. Stocker,* and *MacGillivray & Jones,* for respondent.

THOMPSON, J.—Andrea T. Erickson appeals the summary denial of death benefits for her husband's suicide under a life insurance policy issued by Sentry Life Insurance Co. We affirm.

The National Rifle Association of America (NRA) contracted with Sentry to provide group life insurance to qualified members. The First National Bank of Minneapolis was designated trustee under the NRA insurance trust. While residing in Wyoming, Mr. and Mrs. Erickson received mail from NRA soliciting enrollment in the group life insurance plan. The couple subsequently moved to Othello, Washington, where the insurance enrollment form was completed. Mr. Erickson applied for $50,000 life insurance, and listed his wife as beneficiary.

A certificate, issued to the Ericksons through Sentry, effective May 1, 1981, contained the following suicide clause: "If the Insured shall die by suicide . . . within two years from the effective date of his insurance . . . the liability of the Company shall be limited to the payment of a sum equal to the premiums actually paid . . . for such insurance".

On January 31, 1982, Mr. Erickson committed suicide. In response to Mrs. Erickson's claim for death benefits, Sentry refunded $90 in previously collected premiums. Mrs. Erickson filed suit against Sentry; however, the trial court applied Minnesota law which permits a suicide exclusion and granted summary judgment in favor of Sentry.

■ Since these proceedings were terminated through summary judgment, this court must determine whether there exists a genuine issue as to any material fact and whether Sentry was entitled to judgment as a matter of law. CR 56(c); *Erdman v. Lower Yakima Vly. BPOE Lodge 2112,* 41 Wn. App. 197, 202, 704 P.2d 150, *review denied,* 104 Wn.2d 1030 (1985).

Both parties refer to the policy in question as "group insurance".[1] Generally, "group insurance" refers to situations where

---

[1]Although neither side briefed or argued this issue, the policy could be construed as "franchise insurance". "Franchise insurance" arises where the governing entity of the association grants a franchise to an insurer to solicit its members by accepting a master policy.

Ordinarily, it will permit its official letterhead to be used upon communications to the members and often an article, or advertising, will appear in its official publication to the effect that such is an "approved" or "sponsored" plan. The holder of the master policy and the insurer may negotiate for modification in the terms of the coverage and even agree to its termination, but not without keeping the certificate holders apprised of any changes which are made.

1 J. Appleman, *Insurance* § 54, at 178 (1981). Under a franchise policy, an insurer is dealing directly with its policyholders, and each insured has independent rights against the insurer which are exactly the same as if there were no other contracts existing between such company and the organization or other members. 1 J. Appleman, § 54, at 178; *Wood v. New York Life Ins. Co.,* 255 Ga. 300, 336 S.E.2d 806, 811 (1985); *Employees Serv. Ass'n v. Grady,* 243 Cal. App. 2d 817, 52 Cal. Rptr. 831, 838 (1966). Thus, the law of the state with the most significant contacts would be applied. Here all applicants were required to submit evidence of insurability satisfactory to Sentry, and all such applications were then apparently considered by Sentry and accepted or rejected on an individual basis. *Wood,* 336 S.E.2d at 808. This is in contrast to true "group insurance" which is generally obtained by the employer, rather than by individual application of the employees. *Wood,* 336 S.E.2d at 810. Even so, Mrs. Erickson would not prevail because the policy would be treated as an individual policy subject to RCW 48.23.260 which permits a suicide exclusion. *Wood,* 336 S.E.2d at 811.

there is a close relationship between the certificate holder and the holder of the master policy—usually, but not always, that of employment, with the master policy insured having the responsibility of notifying the insurer as to the persons covered at any particular time, and also having the primary responsibility of seeing to the payment of premiums, whether upon a contributory or noncontributory basis.

1 J. Appleman, *Insurance* § 41, at 83 (1981).

■ Mrs. Erickson contends Minnesota law was erroneously applied because Washington was the jurisdiction with the most significant contacts. We disagree. Rights against the insurer under a group policy are generally governed by the law of the state where the master policy was delivered, here Minnesota. *See* Restatement (Second) of Conflict of Laws § 192, comment *h,* at 605–06 (1971); Annot., *Conflict of Laws as to Group Insurance,* 72 A.L.R.2d 695, 696 (1960); *Miller v. Home Ins. Co.,* 605 S.W.2d 778, 780 (Mo. 1980); *Simms v. Metropolitan Life Ins. Co.,* 9 Kan. App. 2d 640, 685 P.2d 321, 325–26 (1984) (and citations); *Continental Cas. Co. v. Thompson,* 369 F.2d 157, 158 n.1 (9th Cir. 1966). The rationale behind this rule is that each individual insured should enjoy the same privileges and protection. Restatement (Second) of Conflict of Laws § 192, comment *h; Simms,* 685 P.2d at 326; *Boseman v. Connecticut Gen. Life Ins. Co.,* 301 U.S. 196, 206, 81 L. Ed. 1036, 57 S. Ct. 686, 691, 110 A.L.R. 732 (1937). By applying the law of the state where the master policy was delivered, "everywhere it shall have the same meaning and give the same protection and that inequalities and confusion liable to result from applications of diverse state laws" would be avoided. *Boseman,* at 206. Thus, Minnesota law controls and the suicide exclusion in the policy is valid.

Mrs. Erickson also claims the court erred in determining Minnesota law was adequately pleaded and proved by Sentry. We disagree. CR 9(k)(1), amended, effective September 1, 1983, contains pleading and notice provisions regarding the law of other states. It provides three methods of indicating the party may rely upon sister–state law:

(1) by alleging sufficient facts in the party's pleading to demonstrate that sister–state law may be relied upon, (2) by making an outright statement in the party's pleading that sister–state law may be relied upon, or (3) by serving other reasonable written notice that the law of another jurisdiction of the United States may be relied upon.

3A L. Orland, Wash. Prac. § 5121, at 19 (Supp. 1984). Consequently, the prior practice of pleading statutes of other states verbatim or in substance is abandoned under this rule. 3A L. Orland, at 19. *See* Trautman, *Pleading Principles and Problems in Washington,* 56 Wash. L. Rev. 687, 698–701 (1981), for an explanation of pleading foreign law prior to the 1983 amendment of CR 9.

▮ Trautman, at page 699, proposes a method of pleading a general allegation of foreign state law, whether case or statute, to give fair notice to the adversary and the court. This appears to be the result envisioned by CR 9(k)(1). Here, the record reveals that Sentry pleaded Minnesota law in its response to Mrs. Erickson's motion for summary judgment. Finally, Mrs. Erickson's complaint includes sufficient facts that make it apparent the law of Minnesota would be properly applicable. *See* 3A L. Orland, at 19. We find no error.

Affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.

Review denied by Supreme Court July 8, 1986.