[No. 60969-1.    En Banc.    July 7, 1994.]

HOWARD W. RICE, ET AL, *Appellants*, v. DOW CHEMICAL COMPANY, ET AL, *Respondents*.

*Stritmatter, Kessler & McCauley,* by *Paul L. Stritmatter; Richard B. Levenson,* for appellants.

*Stafford Frey Cooper,* by *Ronald S. Bemis* and *Marcus B. Nash,* for respondents.

*Bryan P. Harnetiaux* and *Gregg L. Tinker* on behalf of Washington State Trial Lawyers Association, amicus curiae for appellants.

BRACHTENBACH, J. — Plaintiffs appeal from two summary judgment orders, ultimately dismissing their personal injury

claims against Defendant, Dow Chemical Company (Dow). The trial court granted the separate summary judgment motions on the grounds that: (1) the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.*, preempts state law tort claims to the extent that they are based on failure to warn; and (2) Oregon law applies to this action and under the applicable Oregon statutes of limitation and repose, Plaintiffs' entire action is barred or extinguished. We hold that Plaintiffs' claims were properly dismissed under Oregon law and, therefore, do not reach the federal preemption issue.

Plaintiff, Howard W. Rice, was a United States Forest Service employee from 1957 to 1985. Plaintiff alleges he was extensively and routinely exposed to herbicides, specifically 2,4-Dichlorophenoxyacetic acid (2,4-D) and 2,4,5-Trichlorophenoxyacetic acid (2,4,5-T), manufactured and sold by Dow, while working in Hebo, Oregon, during the years 1959 through 1963. The herbicides were delivered to Plaintiff's forest service location in Oregon bearing the Dow trademark.

Plaintiff moved with his family to Washington in 1967, and has lived here continuously since. His only claimed contact with a Dow chemical in Washington occurred when he was splashed with a herbicide while testing equipment at the ranger station in Mineral, Washington, in the late 1960's.

In July 1985, Plaintiff learned from his physician that he had chronic lymphocytic leukemia and was informed of the possible connection between his illness and the exposure to Dow's chemicals. Plaintiff filed this lawsuit on June 8, 1988, alleging that his exposure to the herbicides proximately caused him to develop leukemia. Plaintiff sought relief on a number of grounds, including failure to warn of risks associated with use of the products and failure to provide adequate instructions for safe use of the products.

In October 1991, Pierce County Superior Court entered an order granting the Defendant's motion for summary judgment and dismissing Plaintiff's claims to the extent they were based on failure to warn, concluding that such claims were preempted by FIFRA. In March 1992, the court granted

Defendant's summary judgment motion, which raised Oregon law for the first time. The court determined that Oregon had the most significant relationship with the action, and that under the applicable statutes of repose and limitation, the action was barred or extinguished. Under the Oregon product liability statute of repose, a "product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption." Or. Rev. Stat. § 30.905(1). It has been in the neighborhood of 30 years since the chemicals were purchased for use or consumption. Further, the Oregon limitation period for product liability actions is 2 years. Or. Rev. Stat. § 30.905(2). Plaintiff discovered that he had leukemia, and the possible link between the disease and the exposure to Dow's products, in July 1985. He commenced this action in June 1988, almost 3 years after discovering his injury. Plaintiff appealed both orders and we accepted certification from the Court of Appeals.

In review of summary judgment, this court engages in the same inquiry as the trial court. *Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993). All facts and reasonable inferences therefrom are to be determined in favor of the nonmoving party. *Our Lady of Lourdes Hosp. v. Franklin Cy.*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993). Contrary to Plaintiff's assertions, issues of law are not resolved in either party's favor, but are reviewed de novo. *Caritas Servs., Inc. v. Department of Social & Health Servs.*, 123 Wn.2d 391, 402, 869 P.2d 28 (1994).

Plaintiff argues that Dow's reliance on Oregon law for the first time on a summary judgment motion was improper as "outside its pleadings and barred by CR 9(k)(1), CR 44.1(a) and RCW 5.24.040". Opening Br. of Appellants, at 6. Plaintiff's assertions are not well taken. There is no requirement in Washington that a party must specifically plead foreign law. CR 9(k)(1) provides:

A party who intends to raise an issue concerning the law of a state, territory, or other jurisdiction of the United States shall set forth in his pleading facts which show that the law of

another United States jurisdiction may be applicable, or shall state in his pleading or serve other reasonable written notice that the law of another United States jurisdiction may be relied upon.

CR 44.1 states that a party raising an issue of other state law shall give notice in accordance with CR 9(k). Thus, there are three acceptable methods under which a party may assert possible reliance on sister-state law, one of which is providing "reasonable written notice" that the party may rely upon sister-state law.

■ The present case offers a good example of why a party need not plead sister-state law, but may provide other written notification of reliance on another state's law. In the complaint there is no reference to Oregon or, indeed, a reference to any state except for Washington. It would be illogical to then require that Defendant plead Oregon law in its answer to the complaint, without any basis for alleging that Oregon law applies. Such an answer might violate CR 11. The Defendant is required, however, to serve reasonable written notice of its reliance on sister-state law. Plaintiff knew from the commencement of the action that the exposure to the chemicals occurred in Oregon; Defendant did not. What is reasonable notice should be determined in light of those facts.

■ Although Plaintiff's answers to interrogatories in 1988 indicated that there was extensive exposure to the herbicides in Oregon, Plaintiff also claimed exposure in Washington. Not until the first deposition was taken in November 1991 did it become clear that the contact with the chemicals occurred almost entirely in Oregon. Once Defendant learned the facts relevant to this case, Defendant filed the summary judgment motion, pleading Oregon law. Knowing the details of the location of the chemical exposure, it should have come as no surprise to Plaintiff that Defendant would raise an issue of Oregon law.

In *Erickson v. Sentry Life Ins. Co.*, 43 Wn. App. 651, 719 P.2d 160, *review denied*, 106 Wn.2d 1009 (1986), the court upheld as proper the assertion of sister-state law for the first

time in a response to a summary judgment motion. We agree with *Erikson* and hold that it is reasonable notice under CR 9(k) to raise sister-state law in a summary judgment motion, after learning the facts which indicate that another state's law arguably applies.

■ Having resolved that proper notice of reliance on Oregon law was given, we turn to the choice of law analysis. To engage in a choice of law determination, there must first be an actual conflict between the laws or interests of Washington and the laws or interests of another state. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100-01, 864 P.2d 937 (1994). Where there is no conflict between the laws or interests of two states, the presumptive local law is applied. *Burnside*, at 101. The conflicting law identified by the parties here is the differences between the Washington and Oregon statutes of limitations and repose.

■ Although the Oregon limitation period of 2 years, Or. Rev. Stat. § 30.905(2), and the Washington limitation period of 3 years, RCW 7.72.060(3), do meaningfully differ, variations in limitation periods are not subject to conflict of laws methodology. Washington adopted the Uniform Conflict of Laws-Limitations Act (Act) in 1983. Under this Act, the "borrowing statute", RCW 4.18.020, indicates that there is first a determination of which state's substantive law applies before there is any consideration of which state's statute of limitation applies. RCW 4.18.020 states that:

> Except as provided by RCW 4.18.040, if a claim is substantively based:
>
> (a) Upon the law of one other state, the limitation period of that state applies; or
>
> (b) Upon the law of more than one state, the limitation period of one of those states, chosen by the law of conflict of laws of this state, applies.
>
> (2) The limitation period of this state applies to all other claims.

After the forum chooses the substantive law of another state, then that state's limitation period will apply. *See* 15 Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Trial Practice* § 433, at 145 (1986). As stated by the comment to the

Act relating to this provision, limitation periods are "to be governed by the limitations law of a state whose law governs other substantive issues inherent in the claim." Unif. Conflict of Law-Limitations Act § 2 cmt., 12 U.L.A. 63 (Supp. 1994).

Plaintiff cites to *Tomlin v. Boeing Co.*, 650 F.2d 1065 (9th Cir. 1981) (applying Washington law) in arguing that a court should apply conflict of law analysis to the statutes of limitation issue. However, *Tomlin* was decided before the Act was adopted. Under the Act, there is no independent choice of law determination of the statutes of limitation issue. *See* Philip A. Trautman, *Choice of Law in Washington The Evolution Continues*, 63 Wash. L. Rev. 69, 97 n.97 (1988). Further, the rule cited by the court in *Tomlin* and relied on by Plaintiff that "where it is 'questionable which of . . . two statutes [of limitation] appl[y] the rule is that the statute applying the longest period is generally used", was incorrectly applied in *Tomlin* to a conflict of laws situation. *Tomlin*, at 1072. That rule is reserved for use where, under Washington law, there are two limitation periods which possibly apply to a claim.

■ Even if conflict of laws methodology is not applied to differing statutes of limitation, statutes of repose can raise a conflict of substantive law. Although sometimes referred to as statutes of limitation (*see Bellevue Sch. Dist. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 691 P.2d 178 (1984) (superseded by statute) (characterizing the builder statute of repose as akin to a statute of limitation, as opposed to a nonclaim statute, for purposes of sovereign immunity)), statutes of repose are actually of a different nature than statutes of limitation. A statute of limitation bars plaintiff from bringing an already accrued claim after a specified period of time. *See, e.g., Van Slyke v. Worthington*, 265 N.J. Super. 603, 607, 628 A.2d 386 (1992); *Boudreau v. Baughman*, 322 N.C. 331, 339-40, 368 S.E.2d 849 (1988) (stating that the term "statute of repose" is used to distinguish ordinary statutes of limitation, limiting the time an action must be commenced after the action has accrued, from those that begin

to run at a time unrelated to the accrual of the cause of action). A statute of repose terminates a right of action after a specific time, even if the injury has not yet occurred. *Morse v. Toppenish*, 46 Wn. App. 60, 729 P.2d 638 (1986), *review denied*, 108 Wn.2d 1007 (1987).

The general authority is that statutes of repose are to be treated not as statutes of limitation, but as part of the body of a state's substantive law in making choice-of-law determinations. *Boudreau*, at 341 (stating that the overwhelming weight of authority accepts the characterization of statutes of repose as substantive provisions in a choice of law context) (citing to numerous state and federal jurisdictions). *See also Berns Constr. Co. v. Miller*, 491 N.E.2d 565, 570 (Ind. App. 1986), *aff'd*, 516 N.E.2d 1053 (Ind. 1987). We hold that statutes of repose do not fall under the statute of limitations borrowing statute, RCW 4.18.020, but instead may raise a conflict of substantive law.

It is clear that in this case there is a conflict between the statutes of repose which may be applicable to the action. Oregon has a statute of ultimate repose which extinguishes all claims relating to a "product liability civil action" 8 years from the time a product is purchased for use or consumption. Or. Rev. Stat. § 30.905(1). Under Washington law, there is some question whether the Washington product liability act applies. The parties have not briefed this matter and we do not need to decide that issue to reach the conclusion that there is a conflict. If the act does apply, RCW 7.72.060(1)(a) provides for repose for product sellers if the harm was caused after the product's useful safe life has expired. There is a rebuttable presumption that the useful safe life of a product is 12 years from the time of delivery. RCW 7.72.060(2). In addition, RCW 7.72.060(1)(b)(iii) provides an exception where the harm "was caused by exposure to a defective product, which exposure first occurred within the useful safe life of the product, even though the harm did not manifest itself until after the useful safe life had expired." If the product liability act does not apply, there is no statute of repose relating to this action. Therefore, whether or not the

product liability act applies, there is a conflict between Oregon and Washington law.

■ To determine which state's law applies to a particular issue, Washington has adopted the "most significant relationship" test as set out in the Restatement (Second) of Conflict of Laws § 145 (1971). *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997 (1976). The Restatement (Second) of Conflict of Laws § 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

Section 6 states the factors relevant to the choice of the applicable law:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> . . . .
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result
>
> . . . .

Restatement (Second) of Conflict of Laws § 6 (1971).

Beginning with an examination of the contacts with each state, the record discloses that Plaintiff's exposure to the Defendant's chemicals occurred almost entirely in Oregon. Although Plaintiff declares in his brief that the exposure occurred in both Washington and Oregon, this is misleading. While working in Oregon, Plaintiff underwent routine, extensive exposure to herbicides. On some days Plaintiff was

exposed to the chemicals continuously for 8 to 10 hours. Plaintiff both applied the chemicals on the ground and was involved in helicopter spray projects. Plaintiff retrieved sensor cards from freshly treated brush, put out to detect whether there was chemical saturation after helicopter spraying, and would leave the brush with his clothing and shoes soaked in chemicals.

In Washington, a chemical product splashed on Plaintiff once, while he was testing out a "hypohatchet", a piece of equipment which cuts and sprays chemicals at the same time. As Plaintiff himself stated, "the contact was very minor" and lasted about a minute. Dep. of Rice; Clerk's Papers, at 483. This brief, 1-time contact is almost irrelevant when compared to the frequent and lengthy exposure which occurred in Oregon.

Neither party contends that Defendant's main headquarters, state of incorporation, place where the product was designed or tested, place where appropriate warnings for the label were determined or place where the product was labeled is either Washington or Oregon. Although these contacts do not favor either Washington or Oregon, there are numerous other contacts leading toward the conclusion that Oregon applies. The relationship between the parties occurred in Oregon, the damaging product was placed in the stream of commerce and sent to Oregon, at the time of the injurious contact Plaintiff lived in Oregon, and Plaintiff was exposed to the chemicals at work while employed in Oregon. Virtually the only connection with Washington is that the disease allegedly caused by the chemicals manifested itself in this state.

Plaintiff argues that Washington does have a significant connection with the claim because Washington is where the Plaintiff was injured, and thus, where the tort was committed. Plaintiff claims that the "place of injury" is Washington because that is where his action accrued. In support of this argument, Plaintiff cites to *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 759 P.2d 405 (1988), involving the question of when a products liability claim

accrues for the purposes of the statute of limitations. However, *North Coast Air* addresses only the timing of accrual and does not discuss or support the proposition that the place a progressive disease is manifested or discovered becomes the place the injury occurred. The place an injured plaintiff's action accrues may be completely unrelated to where the plaintiff was injured.

Plaintiff also attempts to rely on *Lewis v. Bours*, 119 Wn.2d 667, 835 P.2d 221 (1992), to argue that the manifestation of his disease in Washington means that the tort was committed in Washington. *Lewis* is of no help to the Plaintiff. First, *Lewis* involves jurisdictional questions, not choice of law matters. Further, the rule referred to in *Lewis* that the place of the tort is where the injury occurs is applied in cases

> involving a product, instrumentality, agent or other form of representation of the plaintiff which was *present in this state when the injury occurred.* In each case the alleged negligence occurred out of state. The product, instrumentality, agent or other representation was then sent to Washington where an event occurred which resulted in injury to the plaintiff.

(Italics ours.) *Lewis*, at 672. In such cases, where the negligent act (for example, negligent manufacturing) took place out of state, but the product arrived in Washington and caused personal injury here, it follows that the place of the tort is Washington. Here the injurious contact between the product and the Plaintiff did not occur after the product arrived in Washington; it occurred after the product arrived in Oregon. Additionally, even if this court were to find that the tort occurred in Washington, which we do not, this would not compel an application of Washington law. The old rule that the law of the place of the wrong governs the action has been rejected for the "most significant relationship" rule. *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997 (1976).

The only significant contact with Washington, and corresponding state interest, is Plaintiff's residency in Washington. Plaintiff has identified Washington's interest as

its interest in "seeing to it that its residents are compensated for personal injuries". Opening Br. of Appellant, at 20. Although this is a real interest, recognizing this as an overriding concern, despite the lack of contacts, would mean that Washington law would be applied in all tort cases involving any Washington resident, regardless of where all the activity relating to the tort occurred. Furthermore, residency in the forum state alone has not been considered a sufficient relation to the action to warrant application of forum law. *See, e.g.*, Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) ("The fact . . . that one of the parties is domiciled . . . in a given state will usually carry little weight of itself."); *Ferren v. General Motors Corp.*, 137 N.H. 423, 427, 628 A.2d 265 (1993) (" 'The possibility that the employee might change his residence at any time, after the injury, and thus shift the burden of support to another state, makes the fact of present residence less significant.' ") (quoting Robert A. Leflar, *American Conflicts Law* § 160, at 329-30 (3d ed. 1977)).

Oregon's interest is in providing repose for manufacturers doing business in Oregon and whose products are used in Oregon state. The fact that a person living in Oregon, who is exposed to allegedly harmful chemicals while at work in Oregon, using products shipped to Oregon, later moves to another state does not extinguish Oregon's interest in allegedly dangerous or mislabeled products used within its state's boundaries. Applying Oregon law achieves a uniform result for injuries caused by products used in the state of Oregon and predictability for manufacturers whose products are used or consumed in Oregon.

We follow a number of courts in other jurisdictions which have not been deterred from applying the statute of repose of the nonforum state, even where such application would bar plaintiff's claim from accruing and where plaintiff's claim would not have been barred under forum law. *See, e.g., Lawson v. Valve-Trol Co.*, 81 Ohio App. 3d 1, 610 N.E.2d 425 (1991) (applying Indiana statute of repose which barred plaintiff's right of action); *Crisman v. Cooper Indus.*, 748

S.W.2d 273 (Tex. Ct. App. 1988) (applying Florida products liability statute of repose which prevented plaintiff's wrongful death claim from ever arising). Finally, we note that the application of Oregon law to the substantive claim requires the application of the Oregon limitation period as well.

We affirm the trial court's dismissal of Plaintiff's action under Oregon law and do not reach the issue of whether Plaintiff's failure to warn claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act.

ANDERSEN, C.J., and UTTER, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.