Kristin CARIDEO, et al., Plaintiffs,

v.

DELL, INC., Defendant.

Case No. C06–1772JLR.

United States District Court,
W.D. Washington,
at Seattle.

Feb. 12, 2010.

See also 2009 WL 3485933.

Anthony L. Vitullo, Fee Smith Sharp & Vitullo LLP, Dallas, TX, Beth E. Terrell, Jennifer Rust Murray, Marc C. Cote, Toby James Marshall, Terrell Marshall & Daudt PLLC, Seattle, WA, Cynthia B. Chapman, Caddell & Chapman, PC, Houston, TX, John L. Malesovas, Malesovas Law Firm, Austin, TX, Kristen E. Law, Lieff Cabraser Heimann & Bernstein, San Francisco, CA, F. Paul Bland, Trial Lawyers for Public Justice, Washington, DC, Leslie A. Bailey, Trial Lawyers for Public Justice, Oakland, CA, for Plaintiffs.

Beverly G. Reeves, Kim E. Brightwell, Paul Schlaud, Ryan Pierce, Sinead O'Carroll, Reeves & Brightwell LLP, Austin, TX, Jeffrey I. Tilden, Michael Rosenberger, Pamela J. Devet, Gordon Tilden Thomas & Cordell LLP, Seattle, WA, for Defendant.

## ORDER ON MOTION TO DISMISS

JAMES L. ROBART, District Judge.

### I. INTRODUCTION

This matter comes before the court on Defendant Dell Inc.'s ("Dell") motion to dismiss (Dkt. # 103). Having considered the motion, as well as all papers filed in support and opposition, and deeming oral argument unnecessary, the court GRANTS in part and DENIES in part Dell's motion to dismiss (Dkt. # 103). The court dismisses Plaintiffs' breach of warranty and unjust enrichment claims with leave to amend within 30 days of this order.

## II. BACKGROUND

This is a proposed class action involving allegedly defective Inspiron laptop computers designed, manufactured, and sold by Dell. (Am. Compl. (Dkt. # 10) ¶ 1.1.) As putative class representatives, Plaintiffs Kristin Carideo and Catherine Candler allege violations of Washington's Consumer Protection Act ("CPA"), fraudulent concealment, breach of express and implied warranties, and unjust enrichment. Plaintiffs point to three allegedly uniform and inherent defects in the computers: (1) the cooling systems are inadequate to dissipate the heat generated through normal use; (2) the power supplies prematurely fail when used as intended; and (3) the motherboards prematurely fail when used as intended. (*Id.* ¶ 1.7.) They assert that Dell "made uniform material affirmative misrepresentations and uniformly concealed material information in its marketing, advertising and sale of the Affected Computers, which Dell knew to be defective, both at the time of the sale and on an ongoing basis." (*Id.* ¶ 1.4.)

Dell presented its "Terms and Conditions of Sale" ("Agreement") to Plaintiffs at the time of their purchases. (Declaration of Mary Pape ("Pape Decl.") (Dkt. # 15) ¶¶ 5, 6, Exs. A & B.)[1] The Agreement includes a choice-of-law provision selecting the law of Texas to govern the Agreement and "any sales thereunder." (*Id.*, Ex. A at ¶ 2.) The Agreement also includes an arbitration clause and class action waiver. (*Id.*, Ex. A at ¶ 13.) The court previously determined that the arbitration clause and class action waiver are

unenforceable. *See Carideo v. Dell, Inc.* ("*Carideo III*"), No. C06–1772JLR, 2009 WL 3485933, at *6 (W.D.Wash. Oct. 26, 2009).[2]

Dell now moves to dismiss Plaintiffs' first amended complaint. In its motion, Dell raises legal questions regarding whether Texas law or Washington law governs the causes of action, whether Plaintiffs' claims fail as a matter of law, and whether Plaintiffs have satisfied the applicable pleading standards. Plaintiffs oppose the motion to dismiss.

## III. ANALYSIS

### A. Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see al-Kidd v. Ashcroft,* 580 F.3d 949, 956 (9th Cir.2009). "A claim has fa-

---

**1.** Dell provided two versions of the Agreement. (*See* Pape Decl., Exs. A & B.) The parties agree that Exhibit A is the version of the Agreement that governs Ms. Carideo's purchase while Exhibit B is the version of the Agreement that governs Ms. Candler's purchase. (Pape Decl. ¶ 4; Pls. Resp. to Mot. to Compel Arb. (Dkt. # 30) at 3.) The two versions of the Agreement are substantively simi-

lar, but include some different terms. Unless otherwise noted, the court refers to the Agreement as it appears in Exhibit A to Ms. Pape's declaration.

**2.** Dell appealed the court's decision in *Carideo III,* but did not move for a stay of proceedings pending resolution of the appeal. (*See* Dkt. # 99.)

cial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

## B. Applicable State Law

This action raises a host of choice-of-law and conflict-of-laws issues. Dell argues that Texas law governs Plaintiffs' causes of action while Plaintiffs assert that Washington law controls. Dell and Plaintiffs have previously explored similar issues in the course of briefing the question of the enforceability of the arbitration clause and class action waiver. They return once again to these issues, albeit on different terrain as the arbitration clause and class action waiver have now been set aside. The present choice-of-law and conflict-of-laws issues focus squarely on what law the court must apply to the merits of Plaintiffs' causes of action.

 This court, sitting in diversity, applies the choice-of-law rules of Washington. *See Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1005 (9th Cir.2001). Under Washington law, when parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before the court will engage in a conflict-of-laws analysis. *Erwin v. Cotter Health Ctrs.,* 161 Wash.2d 676, 167 P.3d 1112, 1120 (2007). Absent an actual conflict, Washington law applies. *Id.* If a conflict exists and the parties selected the governing law, the court will enforce the choice-of-law provision unless three conditions are satisfied: (1) "if, without the provision, Washington law would apply"; (2) "if the chosen state's law violates a

fundamental public policy of Washington"; and (3) "if Washington's interest in the determination of the issue materially outweighs the chosen state's interest." *McKee v. AT & T Corp.,* 164 Wash.2d 372, 191 P.3d 845, 851 (2008). By contrast, if a conflict exists but the parties did not select the law to govern the issue, the court will determine the controlling law under the "most significant relationship" test. Courts follow *Restatement (Second) Conflict of Laws* (1971) ("*Restatement*") section 188 for contract claims, *Mulcahy v. Farmers Ins. Co. of Wash.,* 152 Wash.2d 92, 95 P.3d 313, 317 (2004), and *Restatement* section 145 for tort and CPA claims, *Rice v. Dow Chem. Co.,* 124 Wash.2d 205, 875 P.2d 1213, 1217 (1994), and *Schnall v. AT & T Wireless Servs., Inc.* ("*Schnall I*"), 139 Wash.App. 280, 161 P.3d 395, 402 (2007), rev'd on other grounds by *Schnall v. AT & T Wireless Servs., Inc.* ("*Schnall II*"), 225 P.3d 929, 168 Wash.2d 125 (2010). *See generally Estate of Felts v. Genworth Life Ins. Co.,* 250 F.R.D. 512, 522 (W.D.Wash.2008); *Bybee Farms, LLC v. Snake River Sugar Co.,* 625 F.Supp.2d 1073, 1078 (E.D.Wash.2007).

1. *The Choice–of–Law Clause Does Not Encompass Plaintiffs' Fraudulent Concealment and CPA Claims, But Does Extend to Plaintiffs' Warranty and Unjust Enrichment Claims*

 The court must first determine whether the scope of the choice-of-law clause contained in the Agreement extends to all, some, or none of Plaintiffs' claims. The choice-of-law clause provides:

THIS AGREEMENT AND ANY SALES THEREUNDER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS RULES.

(Pape Decl., Ex. A at ¶ 2.) Dell argues that all of the claims fall under the choice-of-

law clause while Plaintiffs contend that their fraudulent concealment and CPA claims do not. By contrast, Plaintiffs do not dispute that the choice-of-law clause encompasses their claims for breach of warranty and unjust enrichment; accordingly, the court will assume that the choice-of-law provision extends to those claims.

■ In Washington, "a choice of law provision in a contract does not govern tort claims arising out of the contract." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash.2d 107, 744 P.2d 1032, 1066 (1987). To determine whether the parties intended the choice-of-law clause to cover the tort and CPA claims, the court must focus on the objective manifestations of their agreement—*i.e.*, "the actual words used"—rather than on the unexpressed subjective intent of the parties. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 115 P.3d 262, 267 (2005); *K.S. ex rel. Isserlis v. Ambassador Programs, Inc.*, No. CV–08–243–FVS, 2009 WL 539695, at *2 (E.D.Wash. Feb. 27, 2009).

Here, the choice-of-law clause does not expressly encompass tort and CPA claims. Unlike the expansive language of the choice-of-law clauses at issue in *Brazil v. Dell Inc.*, 585 F.Supp.2d 1158 (N.D.Cal. 2008), and *Dajani v. Dell Inc.*, No. C08–5285 SI, 2009 WL 815352 (N.D.Cal. Mar. 26, 2009), the language of the present choice-of-law clause is relatively modest in scope and does not overtly state that the clause covers a wide range of claims, disputes, or controversies, including statutory and common law claims.[3] Likewise, the language of the choice-of-law clause is substantially narrower than the language of the arbitration clause contained in the same document.[4]

Without similarly broad language upon which to rely, Dell argues instead that the choice-of-law clause's reference to "any sales" under the Agreement is sufficiently open-ended so as to encompass all tort and CPA claims connected to the sale. (Reply (Dkt. # 106) at 15.) There is no question that Plaintiffs' fraudulent concealment and CPA claims arise in connection with the sale of the computers. Nevertheless, the

---

3. In *Brazil*, for example, the choice of law clause read:

> THE PARTIES AGREE THAT THIS AGREEMENT, ANY SALES THERE UNDER, OR ANY CLAIM, DISPUTE OR CONTROVERSY ... INCLUDING STATUTORY, COMMON LAW, AND EQUITABLE CLAIMS ... BETWEEN CUSTOMER AND DELL, arising from or relating to this agreement, its interpretation, or the breach termination or validity thereof, the relationships which result from this agreement, Dell's advertising, or any related purchase, SHALL ... BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO CONFLICTS OF LAWS RULES.

585 F.Supp.2d at 1161 n. 1. The choice of law clause in *Dajani* is similarly broad. *Dajani*, 2009 WL 815352, at *1.

4. The arbitration clause reads:

> ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns, or affiliates (collectively for purposes of this paragraph ("Dell")[ ], arising from or relating to this Agreement, its interpretation, or the breach, termination, or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchases SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION....

(Pape Decl., Ex. A at ¶ 13.)

actual words used in the choice-of-law provision do not extend as broadly as Dell suggests. The tort and CPA claims alleged by Plaintiffs do not focus on the validity or terms of the sales, but rather focus on the alleged bad acts Dell committed leading up to and in the course of the sales. These alleged bad acts are distinct from the sales themselves. Dell drafted the terms of the Agreement and could have used broader or more explicit language in the choice-of-law clause as demonstrated by the language it used in the arbitration clause. With these considerations in mind, the court declines to read the choice-of-law clause to cover Plaintiffs' tort and CPA claims when the actual language of the clause does not purport to cover all claims or disputes arising out of or in connection with the sales. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62–63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1162 (11th Cir.2009) ("A choice of law provision that relates only to the agreement will not encompass related tort claims."). Therefore, the court rejects Dell's argument that the choice-of-law provision encompasses Plaintiffs' fraudulent concealment and CPA claims.

### 2. *Washington Law Applies to Plaintiffs' Fraudulent Concealment and CPA Claims*

■ Absent an applicable choice of law, the court must determine which law governs Plaintiffs' tort and CPA claims under the most significant relationship test. As a preliminary matter, the court will assume that an actual conflict exists between Texas law and Washington law with respect to these claims. An actual conflict exists "[i]f the result for a particular issue

'is different under the law of the two states.'" *Erwin,* 167 P.3d at 1120 (quoting *Seizer v. Sessions,* 132 Wash.2d 642, 940 P.2d 261, 264 (1997)). Although the parties leapfrog over this question in their briefing, they both agree that actual differences exist, as discussed in greater detail with respect to the question of whether Texas law violates a fundamental public policy of Washington.[5] For present purposes, the court will assume, without deciding, that an actual conflict exists based on the states' remedial schemes and the approaches to proving reliance.

■ Washington courts follow *Restatement* section 145 to determine what law applies to tort and CPA claims. *Rice,* 875 P.2d at 1217; *Schnall I,* 161 P.3d at 402. Section 145(2) asks which state has the most significant relationship to the occurrence and the parties under the general principles stated in *Restatement* section 6. In answering this question, courts take into account the following contacts: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicil, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship, if any, between the parties is centered. *Restatement (Second) Conflict of Laws* § 145(2). These contacts must be evaluated according to their relative importance with respect to the issue at hand. *Id.* In addition, *Restatement* section 148 provides guidance "[w]here reliance upon false or fraudulent representations or advertising is a substantial factor in inducing a plaintiff and proposed class members to purchase a defendant's goods or services." *Schnall I,* 161 P.3d at 402; *see Restatement (Second) Conflict of Laws* § 148. Finally, "[a]lthough contractual

---

**5.** Having determined that the choice of law clause does not extend to Plaintiffs' fraudulent concealment and CPA claims, the court need not address the question of whether

Texas law violates a fundamental public policy of Washington vis-à-vis the fraudulent concealment and CPA claims.

choice of law provisions may be considered, they do not dictate the choice of law for tort claims." *Schnall I*, 161 P.3d at 402.

Here, the court's analysis is constrained by the relative dearth of information provided by the parties. Neither Dell nor Plaintiffs addresses *Restatement* section 145, and each touches only briefly on Texas's and Washington's contacts. At a minimum, it is clear that Washington has a strong connection to Plaintiffs because they are residents of the state (Am. Compl. ¶¶ 2.1–2.2), and the proposed class consists entirely of Washington residents (*id.* ¶ 7.2). Washington has a manifest interest in protecting its citizens, enforcing its consumer protection laws, and deterring future wrongful conduct. *See Scott v. Cingular Wireless*, 160 Wash.2d 843, 161 P.3d 1000, 1005 (2007). Texas, however, has a strong connection to Dell because Dell, though incorporated in Delaware, maintains its principal place of business in Round Rock, Texas. (Am. Compl. ¶ 2.3). By contrast, some of the factors appear to have little or no bearing here: the relationship between the parties is not centered in a particular location; and the place of performance is of minimal importance. Finally, the record remains opaque regarding many of the other factors. For instance, while Ms. Candler purchased the computer via the Internet while living in Washington and she experienced problems with her computer in Washington (*see generally* Declaration of Catherine Candler (Dkt. # 32)), the same may not be true for Ms. Carideo who, it appears, purchased the computer via the Internet while studying abroad in the United Kingdom and experienced at least some problems with her computer in California, not Washington (Declaration of Kristin Carideo (Dkt. # 31) ¶¶ 9, 20). Similarly, to the extent Dell engaged in acts of misrepresentation or omission, it remains unclear where and in what manner these acts were made, and where Plaintiffs received the alleged misrepresentations or relied upon them. Likewise, although Dell asserts that "numerous contacts point to Texas," it identifies neither allegations in the amended complaint nor evidence in the record to support this generalization.[6]

On the present record, the court finds that Washington has the most significant relationship to the parties and the occurrences with respect to the tort and CPA claims. This is a close question as both states have notable connections. Nevertheless, Washington's significant ties to Plaintiffs and the putative class, as well as the state's strong interest in protecting its citizens under its laws, outweighs Texas's interests. Despite Texas's interest in regulating a business headquartered within its borders, the court is mindful that Dell has made only a cursory showing of the state's contacts and that Dell is not a Texas corporation, but rather a Delaware corporation. Therefore, the court finds that Washington law governs.

### 3. Texas Law Applies to Plaintiffs' Claims for Breach of Express Warranty and Breach of Implied Warranty

Washington courts generally enforce choice-of-law provisions, but will disregard

---

6. Dell cites *Adler v. Dell, Inc.*, No. 08–CV–13170, 2008 WL 5351042 (E.D.Mich. Dec. 18, 2008), for the proposition that numerous contacts point to Texas. In *Adler*, the court noted that Dell's counsel, at oral argument, "pointed out that the web server was hosted in Texas, all information on the Internet originated in Texas, the order was processed through a Texas server, the title passed outside [the forum state], and there has been no suggestion that Texas would not protect [the plaintiff]." *Id.* at *5. These factual observations may or may not characterize Plaintiffs' Internet purchases in this case as well. Dell simply does not direct the court to allegations or evidence in this case.

the parties' selection if all of the conditions of the three-part test of *McKee* are satisfied. *McKee*, 191 P.3d at 851. Here, Plaintiffs argue that the court should disregard the choice-of-law clause and apply Washington law to their breach of warranty claims. (Resp.(Dkt. # 104) at 12–16.)

*a. Plaintiffs Have Not Shown that Texas Law Violates a Fundamental Public Policy of Washington*

■ The court begins with the second step of the *McKee* inquiry: with respect to Plaintiffs' claims for breach of express warranty and breach of implied warranty, does Texas law violate a fundamental public policy of Washington? As the Washington Supreme Court teaches, Washington has a "fundamental public policy to protect consumers through the availability of class action," *McKee*, 191 P.3d at 852, and favors "aggregation of small claims for purposes of efficiency, deterrence, and access to justice," *Scott*, 161 P.3d at 1005. Plaintiffs point to this policy of promoting the availability of class actions for consumer protection to support their argument that Texas law, which Plaintiffs characterize as less amenable to class actions, violates a fundamental public policy of Washington.

■ First, Plaintiffs argue that the application of Texas law would violate a fundamental public policy of Washington because "the previously stricken class action ban would arguably be enforceable and would deprive consumers of statutory remedies provided under Washington law." (Resp. at 12.) The court rejects this argument as inapposite. Any conflict between Texas law and Washington law as to the enforceability of the class action waiver does not weigh on the present inquiry. In *Carideo III*, the court determined that the class action waiver was unenforceable. Plaintiffs now seek to introduce the legal issues associated with the class action waiver into the present conflict-of-laws

analysis, but have not shown that it would be appropriate to do so. Under Washington law, "a court may be required to apply the law of one forum to one issue while applying the law of a different forum to another issue in the same case." *Brewer v. Dodson Aviation*, 447 F.Supp.2d 1166, 1175 (W.D.Wash.2006) (internal quotations omitted); *see, e.g., Aecon Bldgs., Inc. v. Zurich N. Am.*, No. C07–832–MJP, 2008 WL 786654, at *2–4 (W.D.Wash. Mar. 20, 2008); *Bethlehem Constr., Inc. v. Transp. Ins. Co.*, No. CV–03–0324–EFS, 2006 WL 2818363, at *14 (E.D.Wash. Sept. 28, 2006). Plaintiffs' arguments combine issues that must be addressed independently. *Cf. Brazil*, 585 F.Supp.2d at 1162; *Dajani*, 2009 WL 815352, at *2. The court therefore sets aside and does not consider the issue of the class action waiver as part of its present analysis. Should the court need to address the enforceability of the class action waiver at a later date, the court will analyze that issue at that time. *Cf. Dajani*, 2009 WL 815352, at *2.

Second, with respect to their claim for breach of express warranty, Plaintiffs argue that the application of Texas law would violate a fundamental public policy of Washington because Texas requires a plaintiff to demonstrate reliance, which makes it more difficult to certify a class action. Reliance is an element of a claim for breach of express warranty under Texas law, albeit only to a certain extent. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n. 23 & 693 (Tex.2002). As the Texas Supreme Court explains:

While 'particular' reliance may not be necessary, we have held several times that something rather like it is. The basis-of-the-bargain requirement 'loosely reflects the common-law express warranty requirement of reliance,' and '[r]eliance is also not only relevant to, but an element of proof of, plaintiffs' claims of

breach of express warranty (to a certain extent).'

*PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship.*, 146 S.W.3d 79, 99 (Tex.2004) (quoting *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997), and *Henry Schein, Inc.*, 102 S.W.3d at 686). Washington, too, follows the basis of the bargain approach. *See* RCW 62A.2–313(1). It is therefore difficult to discern significant distance between the laws of the two states on this issue, and Plaintiffs do not unpack their argument or cite additional case law to assist the court. On this record, Plaintiffs have not shown a significant difference as to the reliance element between Texas law and Washington law that implicates a fundamental public policy of Washington.

■ The real crux of Plaintiffs' argument focuses instead on how Texas courts treat the reliance requirement in class actions. Under Texas law, all members of a class action are held to the same standard of proof on the element of reliance that they would be required to meet if each sued individually. *Henry Schein, Inc.*, 102 S.W.3d at 693. As the Texas Supreme Court cautions, this does not mean that reliance cannot be proved class-wide with evidence generally applicable to all class members when class-wide evidence exists. *Id.* It does mean, however, that "evidence insufficient to prove reliance in a suit by an individual does not become sufficient in a class action simply because there are more plaintiffs." *Id.*

It is not entirely clear whether Plaintiffs contend that Washington law applies a

presumption of reliance in class actions involving breach of an express warranty. (*See* Resp. at 15–16.) Although Plaintiffs argue that Washington law extends a presumption of reliance with respect to CPA claims when predicated on fraudulent concealment, *see, e.g.*, *Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D.Wash.2007), they have not shown that the same is true for breach of express warranty claims. Indeed, the framework of the cause of action for breach of an express warranty presupposes an affirmative representation made in the warranty as opposed to merely an omission. Plaintiffs do not suggest how the rationale of *Grays Harbor* extends to their breach of express warranty claim.[7] On this record, Plaintiffs have not shown that any difference as to the burdens of proving reliance in class actions implicates a fundamental public policy of Washington.

Third, Plaintiffs point out that Texas does not recognize an implied warranty claim "when other adequate remedies are available to the consumer." *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex.1998). Plaintiffs provide no further analysis of this issue, and they do not contrast Texas law with Washington law. Even assuming Texas law would not countenance Plaintiffs' breach of implied warranty claim in the face of other remedies, Plaintiffs have not shown that this would violate a fundamental public policy of Washington. On this cursory showing, the court declines to conclude that Texas law violates a funda-

---

7. In *Grays Harbor*, the court reasoned as follows:

A presumption of reliance is appropriate in fraud cases such as this one, where Plaintiffs have primarily alleged omissions, even though the Plaintiffs allege a mix of misstatements and omissions. Proof of the omissions will not be based upon information each class member received about the

furnaces, but on what [the manufacturer] allegedly concealed in light of what consumers reasonably expect.

242 F.R.D. at 573 (citation omitted). Here, by contrast, proof of Plaintiffs' breach of express warranty claim will be based on the information customers received about the computers.

mental public policy of Washington with respect to Plaintiffs' breach of implied warranty claim.

In sum, with respect to their breach of warranty claims, Plaintiffs have identified differences between Texas law and Washington law, but have not shown that these differences implicate a fundamental public policy of Washington. A sentiment expressed by California courts extends with similar force here: the mere fact that the chosen law provides greater or lesser protection than Washington law, or that in a particular application the chosen law would not provide protection while Washington law would, are not reasons for applying Washington law. *See Medimatch, Inc. v. Lucent Techs., Inc.,* 120 F.Supp.2d 842, 862 (N.D.Cal.2000). Plaintiffs have not satisfied the second condition of the *McKee* test. Therefore, the court will not disregard the choice-of-law clause and will apply Texas law to these claims. *See McKee,* 191 P.3d at 851.

In recognition that Plaintiffs pleaded their breach of warranty claims under Washington law (Am. Compl. ¶ 5.1), the court dismisses these causes of action with leave to amend under Texas law. Plaintiffs shall file a second amended complaint within 30 days of this order.[8]

4. *Texas Law Applies to Plaintiffs' Claim for Unjust Enrichment*

Plaintiffs do not dispute that the choice-of-law clause in the Agreement extends to their unjust enrichment claim. They also do not contend that the court should disregard the choice-of-law clause with respect to their unjust enrichment claim. Accordingly, the court will enforce the choice-of-law clause and will apply Texas law. Because Plaintiffs' pleaded their unjust en-

richment claim under Washington law, the court dismisses the claim with leave to amend. Plaintiffs shall file an amended complaint within 30 days of this order.[9]

## C. Rule 9(b) Pleading Standard

■■■■ Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard for claims grounded in fraud. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1107 (9th Cir.2003). To satisfy Rule 9(b), "allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001) (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993)). This heightened standard requires the complaint to include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir.2004)). The Rule 9(b) standard is relaxed in fraudulent omission cases. *See Falk v. Gen. Motors Corp.,* 496 F.Supp.2d 1088, 1098–99 (N.D.Cal.2007); *Zwicker v. Gen. Motors Corp.,* No. C07–0291–JCC, 2007 WL 5309204, at *4 (W.D.Wash. July 26, 2007). In such cases, a plaintiff "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk,* 496 F.Supp.2d at 1098–99.

■■■ Dell argues that Plaintiffs have not satisfied the demands of Rule 9(b) because they have neither pleaded the

---

8. Having made this determination, the court does not consider Dell's other arguments made in support of dismissing the breach of warranty claims.

9. Having made this determination, the court does not consider Dell's other arguments made in support of dismissing the unjust enrichment claim.

what, why, and how involved, nor adequately pleaded a duty to disclose, knowledge or intent to deceive, and reliance.[10] (Mot.(Dkt. # 103) at 25–29.) None of these arguments survive scrutiny. First, the what, why, and how of Plaintiffs' omission-based claims are alleged with adequate particularity to survive a motion to dismiss. Plaintiffs have sufficiently pleaded the what (concealment of three specific defects (Am. Compl. ¶ 1.7)), and the why (to induce customers to purchase the computers at the price sold (*id.* ¶ 9.8)). They have also sufficiently pleaded how Dell should have conveyed to them the existence of the alleged defects: in any manner prior to the sale or at the time a customer reported a problem.[11]

■ Second, Plaintiffs have adequately pleaded that Dell had a duty to disclose. Under Washington law, "[t]he duty to disclose in a business transaction arises if imposed by a fiduciary relationship or other similar relationship of trust or confidence or if necessary to prevent a partial or ambiguous statement of facts from being misleading." *Van Dinter v. Orr,* 157 Wash.2d 329, 138 P.3d 608, 610 (2006); *see Haberman,* 744 P.2d at 1069–70. Further, as this court has explained: "[w]hen such a manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that information." *Zwicker,* 2007 WL 5309204, at *3; *see Testo v. Russ*

*Dunmire Oldsmobile, Inc.,* 16 Wash.App. 39, 554 P.2d 349, 358 (1976).[12] Plaintiffs have pleaded that Dell was in a superior position to know the facts about the hidden defects in the computers (Am. Compl. ¶ 9.4), and common sense dictates that the defects alleged by Plaintiffs are not of the sort readily ascertainable to the average customer.

Third, Plaintiffs have adequately pleaded reliance because but for Dell's failure to disclose they would not have purchased their computers at the price paid. *See Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,* 162 Wash.2d 59, 170 P.3d 10, 22 (2007).

Fourth, Plaintiffs have adequately pleaded knowledge of falsity, or scienter. Although Dell contends that something more is required than Plaintiffs' allegation that Dell knew of the defects, Rule 9(b) provides that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." In practice, this means that "[t]he requirement for pleading scienter is less rigorous than that which applies to allegations regarding the 'circumstances that constitute fraud.'" *Oestreicher v. Alienware Corp.,* 544 F.Supp.2d 964, 968 (N.D.Cal.2008). Having reviewed the amended complaint, the court is satisfied that Plaintiffs have set forth facts from which an inference of scienter could be drawn. *See Cooper v. Pickett,* 137 F.3d 616, 628 (9th Cir.1997).

---

**10.** Dell does not attack the elements of particular claims, and therefore the court will not address each claim under Rule 9(b) on a claim-by-claim basis.

**11.** Admittedly, Plaintiffs do not suggest a particular method that Dell should have used to convey the information to its customers. The court, however, is not persuaded that Rule 9(b) requires this type of "how" on the facts of this case.

**12.** In *Testo,* the Washington Court of Appeals explained:

A buyer and seller do not deal from equal bargaining positions when the latter has within his knowledge a material fact which, if communicated to the buyer, will render the goods unacceptable or, at least, substantially less desirable. Failure to reveal a fact which the seller is in good faith bound to disclose may generally be classified as an unfair or deceptive act due to its inherent capacity to deceive and, in some cases, will even rise to the level of fraud.

554 P.2d at 358.

Therefore, the court rejects Dell's argument that dismissal is appropriate for failure to satisfy Rule 9(b).

### D. Rule 8 Pleading Standard

Dell also argues that Plaintiffs' claims should be dismissed for failure to satisfy the Rule 8 pleading standard recently addressed by the Supreme Court in *Iqbal* and *Twombly*. (Mot. at 29–30.) This argument boils down to the assertion that it makes no sense for Dell to sell computers with known defects when those computers are covered by warranty. In other words, Dell believes Plaintiffs' allegations are not plausible. This argument is unavailing. Manufacturers and other corporate entities, like individuals, do not always act within the law or in accordance with everyday notions of common sense. This does not mean, however, that they cannot be held to account under the law when they act illogically or against their bottom line. The court rejects Dell's argument that Plaintiffs' amended complaint must be dismissed because the claims alleged are not plausible.

The court also rejects Dell's argument that Plaintiffs' claims with respect to the Inspiron 1100 and 1150 models must be dismissed because Ms. Carideo and Ms. Candler did not purchase or own these computer models. (*Id.* at 30.) Plaintiffs have pleaded the same core factual allegations and causes of actions regarding these computer models as they have regarding the Inspiron 5100 and 5160 models. Although Dell's argument as to these computer models touches on legal concerns that may surface later in this action, the court is satisfied that the amended complaint includes sufficient factual allegations.

### E. Fraudulent Concealment and CPA Claims

Dell argues that Plaintiffs' fraudulent concealment and CPA claims fail as a matter of law and must be dismissed because Dell's duty to its consumers was limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue. (Mot. at 17.) Dell concedes that "there is no Washington case addressing this precise issue," but contends the court should follow California case law. (*Id.*) Plaintiffs agree that there is no Washington case law on point. (Resp. at 19.) They argue, however, that the absence of such case law speaks volumes and demonstrates that Washington follows a different approach. (*Id.*)

The cases upon which Dell relies stand for the principle that a manufacturer cannot be held liable under the California Consumers Legal Remedies Act ("CLRA") for the failure to disclose a defect that manifests after the expiration of the warranty period unless either (1) the omission is contrary to an affirmative representation or (2) the omission relates to a fact the defendant was obligated to disclose, such as product safety. *See Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal.App.4th 824, 835, 51 Cal.Rptr.3d 118 (Cal.Ct.App. 2006). This principle has been extended to CLRA actions involving alleged computer defects. *See, e.g., Oestreicher,* 544 F.Supp.2d at 969–973; *Hoey v. Sony Elecs. Inc.,* 515 F.Supp.2d 1099, 1103–05 (N.D.Cal.2007); *Long v. Hewlett–Packard Co.,* No. C06–02816 JW, 2007 WL 2994812, at *3–4 (N.D.Cal. July 27, 2007).

Here, Dell has not shown that the principle articulated in *Daugherty* and its progeny extends with equal force to Washington law. California's CLRA and Washington's CPA are not co-extensive, and *Daugherty* is grounded in the language of the CLRA. Ordinarily, under the CPA, "[w]hat constitutes an unfair and deceptive act or practice is a question for the fact finder," *Burbo v. Harley C. Douglass, Inc.,*

125 Wash.App. 684, 106 P.3d 258, 266 (2005), and a party's failure to disclose material facts may give rise to a CPA violation, *see Griffith v. Centex Real Estate Corp.*, 93 Wash.App. 202, 969 P.2d 486, 492 (1998), and *Testo*, 554 P.2d at 358. Dell identifies no case law that supports its argument, although it suggests that the economic loss rule stands for a similar principle. On this as-of-yet undeveloped record and absent a signal from Washington courts that the principle of *Daugherty* extends to Washington, the court declines to dismiss Plaintiffs' claims on this ground at this time.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Dell's motion to dismiss (Dkt. # 103). The court dismisses Plaintiffs' breach of warranty and unjust enrichment claims with leave to amend. Plaintiffs shall file a second amended complaint within 30 days of this order.